**ABRAMS–RODKEY et al., Appellants,**

v.

**SUMMIT COUNTY CHILDREN SERVICES et al., Appellees.**

[Cite as *Abrams–Rodkey v. Summit Cty. Children Serv.*, 163 Ohio App.3d 1, 2005-Ohio-4359.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22358.

Decided Aug. 24, 2005.

Lawrence W. Vuillemin and Alison M. Breaux, for appellant.

Keith Prytal, for appellee Summit County Children Services Board.

Jim Petro, Ohio Attorney General, and Laurel Blum Mazorow, Assistant Attorney General, for appellee Department of Job and Family Services.

SLABY, Presiding Judge.

{¶ 1} Appellants, union employees of Summit County Children Services, appeal the decision of the Summit County Court of Common Pleas denying their motion to introduce new evidence and affirming the decision of the Ohio Unemployment Compensation Board denying their claims for unemployment compensation. We affirm the decision of the trial court.

{¶ 2} Appellants in this case are members of Communication Workers of America, Local 4546 who were employees of Summit County Children Services ("SCCS"). Appellants conducted a work stoppage upon the expiration of their collective-bargaining agreement, and the instant action arose in regard to their claims for unemployment-compensation benefits for the period of time that they did not work. SCCS has approximately 500 employees. Of those employees, between 290 and 370 are members of the union.

{¶ 3} The union had a collective-bargaining labor agreement with SCCS that was effective from April 1, 2000, until March 31, 2003. The agreement was given an automatic 90–day extension through June 29, 2003. Following the expiration of the first extension, the parties agreed to a second extension of the agreement through July 13, 2003. Numerous negotiation sessions were held between the union and SCCS between January 30, 2003, and July 13, 2003. The parties were unable to come to an agreement before midnight of July 13, 2003. On July 14,

2003, after having presented SCCS with a notice of intent to strike or picket, numerous union members did not show up to work. Approximately 230 union members then filed claims for unemployment-compensation benefits.

{¶ 4} On August 4, 2003, pursuant to R.C. 4141.283, a consolidated administrative hearing was held in relation to the claims for unemployment-compensation benefits advanced by the estimated 230 union members. On August 14, 2003, a hearing officer from the Ohio Department of Job and Family Services' Unemployment Compensation Division held that appellants were unemployed due to a labor dispute other than a lockout and thus were not eligible for unemployment compensation benefits pursuant to R.C. 4141.29.

{¶ 5} Appellants appealed the administrative decision to the Unemployment Compensation Review Commission, which denied their request on January 8, 2004. Appellants then appealed to the Summit County Court of Common Pleas. Appellants asked the trial court to reverse the determination of the Unemployment Review Commission disallowing their appeal and sought the court's permission to introduce new evidence for a de novo review. The trial court upheld the decision of the Unemployment Review Commission and denied appellants' motion to introduce new evidence. Appellants now appeal, asserting two assignments of error for our review.

## ASSIGNMENT OF ERROR I

The lower court erred in failing to reverse the decision of the Unemployment Compensation Commission as it was unlawful, unreasonable, and/or against the manifest weight of the evidence.

{¶ 6} In their first assignment of error, appellants maintain that the trial court erred by upholding the decision of the Unemployment Compensation Review Commission. Specifically, appellants claim that the decision of the commission was unlawful, unreasonable, and against the manifest weight of the evidence, and the trial court erred in affirming it. We disagree.

{¶ 7} A reviewing court must uphold the decision of the commission (or review board) unless that decision was "unlawful, unreasonable, or against the manifest weight of the evidence." *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 45, 23 O.O.3d 57, 430 N.E.2d 468. Furthermore, "[a] reviewing court can not usurp the function of the triers of fact by substituting its judgment for theirs. 'The decision of purely factual questions is primarily within the province of the referee and the board of review.' " Id., quoting *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 518, 36 O.O. 167, 76 N.E.2d 79. The Supreme Court has noted that "while appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to

determine whether the board's decision is supported by the evidence in the record." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207, citing *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18, 19 OBR 12, 482 N.E.2d 587. Therefore, we must uphold the commission's decision unless we find that it was against the manifest weight of the evidence. In determining whether the decision was against the manifest weight of the evidence, we must defer to the agency's findings of fact so long as they are supported by credible proof.

{¶ 8} When evaluating whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in the criminal context. *In re Ozmun* (Apr. 14, 1999), 9th Dist. No. 18983, 1999 WL 225847, at 3. That is, we review the record, weigh the evidence, consider the credibility of witnesses, and determine whether the court "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 9} In the case at hand, the issue is whether the decision of the Unemployment Compensation Review Commission that appellants engaged in a labor dispute other than a lockout was unreasonable, unlawful, or against the manifest weight of the evidence. R.C. 4141.29(D) provides:

[N]o individual may * * * be paid benefits under the following conditions:

For any week with respect to which the director finds that:

The individual's unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which the individual is or was last employed; and for so long as the individual's unemployment is due to such labor dispute.

{¶ 10} The Supreme Court has defined a "lockout" as "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." *Anderson v. Union Camp Corp.* (Oct. 18, 1996), 5th Dist. No. 96AP030024, 1996 WL 752927, at 5, quoting *Bays v. Shenango* (1990), 53 Ohio St.3d 132, 133, 559 N.E.2d 740. A lockout occurs when "the conduct of the employer in laying down terms must lead to unemployment inevitably in the sense that the employees could not reasonably be expected to accept the terms and, in reason, there was no alternative for them but to leave their work." *Zanesville Rapid Transit, Inc. v. Bailey* (1958), 168 Ohio St. 351, 355, 7 O.O.2d 119, 155 N.E.2d 202.

{¶ 11} The Ohio Supreme Court adopted a status quo test to determine whether a lockout occurred when a collective-bargaining agreement expired. It stated:

> [W]hen the contract (the collective bargaining agreement) has in fact expired and a new agreement has not yet been negotiated, the sole test under * * * the Unemployment Compensation Law * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification of unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Bays*, 53 Ohio St.3d 132, 134–135, 559 N.E.2d 740, quoting *Erie Forge & Steel Corp. v. Unemployment Comp. Bd. of Rev.* (1960), 400 Pa. 440, 443–445, 163 A.2d 91.

{¶ 12} The review board in this case found that the union had failed to maintain the status quo. We find that its finding was not against the manifest weight of the evidence, and thus, we affirm.

{¶ 13} The undisputed facts of this case are as follows: the union and SCCS were attempting to negotiate a new contract. The previous contract expired at midnight on July 13, 2003. At the time the previous contract had expired, the union and SCCS had not come to an agreement regarding a new contract. On July 14, 2003, approximately 230 union workers failed to show up to work.

{¶ 14} The issue in this case is which side, the union or the employer, failed to maintain the status quo after the expiration of the previous contract. Each side argues that the other was at fault for failing to maintain the status quo. Along with a proposal for a new contract, SCCS furnished the union with a written statement, which is at issue in this appeal. The statement provides as follows: "Effective at 11:59 today, all previous and existing offers made by the Agency to the Union are completely withdrawn and any and all tentative agreements previously entered into are null and void." Pointing to the above statement, the union claims that it was, essentially, locked out as any offers made by SCCS, including offers for continued employment, were made null and void by the terms of the statement. Conversely, SCCS argues that after the statement had been given to the union, it had orally represented to the union that it would stay open for business and that the employees could continue working under the same

terms and conditions of the contract. Therefore, SCCS claims, the union failed to maintain the status quo when approximately 230 workers failed to show up to work.

{¶ 15} In its findings of fact, the hearing officer found that the union would not continue to work without a new agreement or an extension of the expired agreement. It is not contested that the union did present a written offer to SCCS "to continue to work under the current contract while negotiations continue[d]." SCCS took the position that it would not continue the expired agreement. SCCS reasoned that extending the agreement had not been productive during the previous extensions; thus, they did not wish to extend it again. However, despite their refusal to actually extend the previous contract per the union's request, SCCS sought to maintain the status quo by remaining open for business and providing the employees work under the same terms and conditions that they had under the expired contract.

{¶ 16} The union now contends first, that no offer was made to continue working, and second, that even if an oral offer had been made, it was rendered null and void per the application of the statement. We disagree.

{¶ 17} In regard to the union's argument that the offer simply had not been made, we note that the commission considered the evidence above, along with the testimony of multiple witnesses, and determined that SCCS had, in fact, extended an oral offer to the union to maintain the status quo while negotiations were ongoing. As mentioned above, it is not our duty, as a reviewing court, to be a fact-finder. We may reverse only if the decision is unlawful, unreasonable, or against the manifest weight of the evidence, which we do not find to be the case here.

{¶ 18} In its findings of fact, the hearing officer stated:

At the July 13, 2003, negotiation session, prior to the midnight expiration of the second extension of the agreement, SCCS verbally informed [the Union], through a mediator and also directly, that SCCS would remain open for business and the member of the [Union] could continue to work under the same terms and conditions of the expired agreement. [The Union] took the position that they would not work without a new agreement or an extension of the expired agreement.

In concluding that an oral offer had been made by SCCS to the union to continue working, the commission considered a variety of evidence, including the testimony of the Director of Labor Relations for SCCS and SCCS's Director of Human Resources.

{¶ 19} Chester Dawson, the Director of Labor Relations for SCCS, testified that the union was told that "any employee who wanted to could come in and

work under the same terms and conditions as the then to be expired contract." Similarly, John Thompson, the Director of Human Resources, testified that "the employees (the Union members) could work under the same terms and conditions as were provided for in the expired contract." Thompson stated that the employees who did not stop working continued to receive "the same benefits, the same pay, the same terms and conditions as provided for under the expired contract."

{¶ 20} Furthermore, the hearing officer noted that numerous employees continued to work while receiving the same benefits and conditions provided under the expired contract, a situation tending to show that the striking employees conducted a work stoppage other than a lockout. All the union witnesses acknowledged that numerous union members did continue to work after the July 14, 2003 work stoppage. Both Thompson and Dawson testified that over 100 union members had returned to work as of the date of the hearing. Some of the union members never stopped work, while others returned after they had initially stopped. The fact that many union members continued working after their contract had expired and others resumed working thereafter under the same terms and conditions as the expired contract bolsters SCCS's argument that the union employees were not subject to a lockout.

{¶ 21} Relying on the above testimony and the fact that numerous employees did continue to work while receiving the same pay and benefits that they had been provided under the expired contract, we cannot conclude that the decision of the commission was against the manifest weight of the evidence. While the union did present evidence supporting its position that the work stoppage was the result of a lockout, it did not meet its burden of proof in showing that the commission "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." *Tzangas,* 73 Ohio St.3d at 697, 653 N.E.2d 1207, quoting *Irvine,* 19 Ohio St.3d at 18, 19 OBR 12, 482 N.E.2d 587. As the holding that the oral representation was made was supported by sufficient evidence, we accept the hearing officer's findings of fact on the matter. See id. at 696, 653 N.E.2d 1207.

 {¶ 22} Having determined that we must defer to the fact finder's conclusion that the oral offer was made, we now turn to the effect of the statement on that offer. The union argues that even if oral representations were made that employees could continue to work after the contract expired, the oral representations were nullities in light of the written statement that SCCS gave to the union. We disagree.

{¶ 23} SCCS's statement that all previous offers made to the union would be null and void as of 11:59 p.m. on July 13, 2003, was not a forward-looking statement that would automatically nullify any future offer. The statement was presented to the union along with SCCS's proposal for a new employment contract. We read the statement to mean that SCCS's new contract proposal would be on the table until 11:59 of that day. If, at the end of July 13th, a new contract had not been entered into, then the enhancements/agreements/concessions that SCCS had made to that point would no longer be effective, and negotiations would start afresh the next day. Our review of the case law indicates that language like that in the statement is a common bargaining tactic designed to coerce the other party into accepting a proposed agreement. See *Mead Corp. v. Natl. Labor Relations Bd.* (C.A.11, 1983), 697 F.2d 1013; *Natl. Labor Relations Bd. v. Randle–Eastern Ambulance Serv., Inc.* (C.A.5, 1978) 584 F.2d 720; *Golden Eagle Spotting Co. v. Brewery Drivers & Helpers* (C.A.8, 1996), 93 F.3d 468.

{¶ 24} Withdrawing previous proposals is considered a "hard bargaining" tactic designed to put pressure on the other party of the negotiations. It is a lawful bargaining practice so long as the withdrawal of the proposals is done in good faith. *Driftwood Convalescent Hosp.* (1993), 312 N.L.R.B. 247, 252, 1993 WL 373906. Since the union does not claim that the bargaining practice was made in bad faith, and the State Employment Relations Board, rather than this court, has the jurisdiction to remedy contested bargaining tactics, we accept SCCS's contention that the statement was intended to be a bargaining tool designed to pressure the union into accepting SCCS's proposed employment contract. See R.C. 4117.12.

{¶ 25} The statement does not have an effect on maintaining the status quo. It deals with the negotiations up to that point on the new contract; it does not have a bearing on the validity of SCCS's later offer to allow the union members to continue working. However, even considering the union's argument that the statement was controlling and made all offers, including offers made outside of the strictures of the proposed employment contract, null and void, contract law dictates that a later-made offer will revoke a previous offer to the extent that the offers are inconsistent. Restatement of the Law 2d, Contracts (1981), Section 43. A subsequent, inconsistent offer revokes an earlier offer. Id. Thus, even if we find that the statement was intended to apply to all offers between SCCS and the union, a later, inconsistent offer—in this case, the offer to continue working—revokes the earlier offer. In this case, the fact-finder found that an oral offer to continue working had been made by SCCS to the union at the close of negotiations. Therefore, we find that SCCS's oral offer to the union

allowing the members to continue working was controlling, as it was the last in time.

{¶ 26} The Supreme Court of Ohio has held that with regard to contract interpretation, courts should give effect, where possible, to each provision contained therein. *Farmers' Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834, paragraph six of the syllabus. "[I]f one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." Id. Thus, if we can interpret an offer to give it meaning, then we must do so. In order to accept the union's assertions that, essentially, the statement served to nullify the later-made offer to continue working, this court would necessarily render SCCS's offer meaningless, which we decline to do.

{¶ 27} In conclusion, we find that the fact-finder's holding that an oral offer was made by SCCS to the union at the close of negotiations was supported by sufficient evidence, and thus, we defer to that finding. The statement did not have a bearing on SCCS's maintaining the status quo as it relates to the new employment contract. However, even assuming that the statement would apply to nullify all previously made offers, SCCS's oral offer revoked its applicability. As SCCS's oral offer was the last in time, it revoked any prior inconsistent offers, including the statement at issue. The fact-finder concluded that the oral offer had indeed been made, and we are therefore bound to give meaning to that offer; we cannot simply ignore the effect of the offer and consider it a nullity. In light of the above, we find that the trial court did not abuse its discretion in upholding the finding that the union failed to maintain the status quo when its employees failed to show up to work on June 14, 2003.

{¶ 28} We overrule the union's first assignment of error and affirm the decision of the trial court.

## ASSIGNMENT OF ERROR II

The lower court erred in denying Appellants' motion to introduce new evidence before the court in conjunction with the court's review of the issues presented.

{¶ 29} In their second assignment of error, appellants argue that the trial court erred in denying their motion to introduce new evidence. We disagree.

{¶ 30} Appellants point to R.C. 2506.03 in support of their assertion that the trial court erred in denying their motion to introduce new evidence. R.C. 2506 deals with appeals from orders of administrative officers and agencies of political subdivisions. R.C. 2506.03 provides:

The hearing of such appeal * * * shall be confined to the transcript as filed pursuant to [R.C. 2506.02] unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:

(1) The transcript does not contain a report of all evidence admitted or proffered by the appellant;

(2) The appellant was not permitted to appear and be heard in person * * *;

(3) The testimony adduced was not given under oath.

None of the above situations to which the transcript could have been supplemented apply to the case at hand. In fact, appellants do not even argue that any of the above provisions apply. More importantly, however, R.C. 2506.03 is not applicable to the instant case. R.C. Chapter 2506 applies to decisions made by a political subdivision. This section, R.C. 2506.01, "does not include the state itself or any of the state agencies." *State ex. rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.* (1986), 22 Ohio St.3d 1, 7, 22 OBR 1, 488 N.E.2d 181, quoting *Fair v. School Emp. Retirement Sys.* (1975), 44 Ohio App.2d 115, 118–119, 73 O.O.2d 101, 335 N.E.2d 868. Since the Ohio Unemployment Compensation Review Commission is an agency of the state of Ohio and appeals from a decision of the Unemployment Review Commission are specifically governed by R.C. 4141, the provisions of R.C. 2506 do not apply to the case at hand.

{¶ 31} R.C. 4141.282 sets forth the procedure to be followed when appealing a final decision of the Unemployment Compensation Review Commission to a court of common pleas. R.C. 4141.282(H) provides: "The court shall hear the appeal on the certified record provided by the commission." In this case at hand, appellants sought the trial court's permission to introduce new evidence into the record at the trial court level.

{¶ 32} In finding that the reviewing court is limited to the record as certified by the review commission, the Supreme Court held, "[T]he Court of Common Pleas is not authorized to receive evidence but 'the appeal shall be heard upon such record certified by the board[.]'" *Hall v. Am. Brake Shoe Co.* (1968), 13 Ohio St.2d 11, 14, 42 O.O.2d 6, 233 N.E.2d 582. In *Hall,* the court reasoned that "the proceedings before (the lower) court are but a *review* of the determination of the board of review"; thus, the trial court is limited to reviewing only what was before the review board when it came to its decision. See, also, *Lynch v. Youngstown,* 115 Ohio App.3d 485, 491, 685 N.E.2d 813 ("the common pleas court is not authorized to receive evidence but is rather limited to a review of the record as so certified" by the board of review).

{¶ 33} We note that the union representative did not argue that there was insufficient time to prepare for the hearing or that a mistake had occurred in the preparation or transmission of the record.

{¶ 34} Based upon the foregoing, we find that the trial court did not err in refusing to consider the additional evidence offered by the union. Appellants' second assignment of error is overruled.

{¶ 35} We overrule appellants' two assignments of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

MOORE, J., concurs.

WHITMORE, J., concurs in part and dissents in part. ·

WHITMORE, Judge, concurring in part and dissenting in part.

{¶ 36} I respectfully dissent from the majority decision regarding Assignment of Error Number One as I believe that the review commission's decision is against the manifest weight of the evidence. The review commission's findings of fact do not support its conclusion that the union failed to maintain the status quo. Moreover, the trial court clearly lost its way and created a manifest miscarriage of justice when it affirmed the review commission's decision.

{¶ 37} Under the status quo test, if employees agree to continue working under an expiring contract and their employer refuses to so extend the expiring contract and maintain the status quo, the resulting work stoppage constitutes a lockout. It is undisputed that on July 13, 2003,[1] the union, as representatives of SCCS's employees, offered in writing to work under the same terms and conditions of the current contract while negotiations continued. It is also undisputed that SCCS stated in writing on July 13, 2003, "Effective at 11:59 today, all previous and existing offers made by [SCCS] to the Union are completely withdrawn and any and all tentative agreements previously entered into are null and void."

{¶ 38} In its findings of fact, the hearing officer found that after delivery of the statement by SCCS and prior to the midnight deadline, SCCS orally informed the union that it would be open for business and that the union members—i.e., SCCS employees—could work under the terms and conditions contained in the expiring agreement. The union negotiators dispute such notice. The review commission also found that the union maintained that the employees would not work without

---

1. The contract expired at midnight on July 13, 2003.

a new agreement or an extension under the same terms and conditions of the expiring agreement.

{¶ 39} Assuming arguendo the truth of SCCS's claim of an oral offer to permit employees to continue to work under the same terms and conditions, the SCCS writing that unambiguously provided that all previous offers, including the oral offer to continue employment under the same terms and conditions, shall be "completely withdrawn," voided the oral offer. There is no dispute that the union agreed to work under an extension of the expired agreement; thus, the writing that became effective at 11:59 p.m. on July 13, 2003, clearly upset the status quo.

{¶ 40} There is no evidence in the record that SCCS ever officially and unambiguously declared after its 11:59 deadline that it had intended or would carve out the offer for continued work under the same terms and conditions as the expired contract from its unambiguous declaration of withdrawal of all offers. SCCS elected to use its written declaration of the 11:59 deadline as a bargaining tactic. It should not now be heard to claim that it did not mean what the writing declared. The results would be the same had the union chosen to employ this tactic. The parties are equally sophisticated in the art of negotiation and in this case SCCS used a tactic without careful regard for its meaning and implementation.

{¶ 41} Moreover, I am not persuaded by the fact that some employees returned to work on July 14, 2003. Such a fact is not evidence that the union upset the status quo; it merely shows that some employees went to work. The status quo test reviews the facts at the time that negotiations were ongoing, not after the lockout has occurred. See *Aliff v. Ohio Bur. of Emp. Serv.*, 9th Dist. No. 20828, 2002-Ohio-2642, 2002 WL 1263975, at ¶ 14. At 11:59, one minute before the contract was to expire, SCCS's letter took effect, and all of its previous offers were off the table, leaving the employees with no indication of whether they could return to work the following day, what would happen if they did return, or the terms and conditions of their employment.

{¶ 42} For the above reasons, I would disagree with the majority and overrule the decision.