OPINION
{¶ 1} Appellant, Gary Shaffer, appeals from a final judgment of the Ashtabula County Court of Common Pleas, affirming the decision of the Ohio Unemployment Compensation Review Commission ("the Review Commission"). For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On December 7, 2001, appellant filed an application for the determination of benefit rights, and benefits were allowed with a benefit year beginning on December 2, 2001. This compensation apparently ceased or was suspended in May 2002, when appellant began employment with Cousins Basement Waterproofing, Inc. ("Cousins Basement") as a laborer at various job sites.
 {¶ 3} Appellant understood that, as part of his employment with Cousins Basement, he was required to provide his own transportation to the job sites. Appellant lacked reliable transportation and missed work as a result.
 {¶ 4} In June 2002, appellant sent a letter to his boss at Cousins Basement explaining his transportation difficulties. Appellant apologized for missing work and stated that he would continue to try to report to work when he had reliable transportation. Appellant stated that he felt that, at best, he could work on a part-time basis because of his transportation problems. Cousins Basement did not sign this letter, and the record does not indicate that Cousins Basement in any way acknowledged the letter.
 {¶ 5} Despite this, Cousins Basement continued to schedule appellant for work, and appellant worked periodically until September 2002. Appellant worked zero hours during the week ending August 10, 2002; thirteen hours during the week ending August 17, 2002; zero hours during the week ending August 24, 2002; twenty-five hours during the week ending August 31, 2002; twenty-four hours during the week ending September 7, 2002; twelve hours during the week ending September 14, 2002; zero hours during the week ending September 21, 2002; and six hours the following week.
 {¶ 6} Appellant last worked on September 25, 2002, but he was scheduled to work for the next few days. Appellant never appeared for work on September 26, 2002, or the remaining days, and he did not immediately notify Cousins Basement of any problems. On or about September 29, 2002, appellant contacted Cousins Basement and explained the situation and his transportation difficulties. Appellant's boss arranged for his transportation to the job site, but appellant did not appear to be picked up.
 {¶ 7} Appellant had no communication with Cousins Basement until approximately October 7, 2002. On that day, appellant sent a letter to Cousins Basement again explaining his transportation problems. Appellant stated, "[i]t seems my transportation plan was unreliable (as well as too costly). I've yet to tow my new transportation from Penna. to my house ($266.00 for AAA and costs not covered). So, without any means of transportation, enough money to survive on for approx. 10 days, I must somehow survive long enough to somehow tow the vehicle to me so I can earn money to survive! So . . . unless something unexpectedly happens to remedy my present dilemma, I must apply for my 14 week unemployment extension. * * *"
 {¶ 8} In this letter, appellant offered names of other individuals who could work for Cousins Basement. The letter concluded, "[t]hanks for hiring me. My `problems' have caused you problems as well, and for that I sincerely apologize. I certainly did not want things to end this way. Perhaps someday I can somehow repay you for your understanding and tolerance through my troubled employment with you[.]" (Emphasis added.) The letter also included a "P.S.," which stated, "please mail my last day's wages to my address. I'll need every penny to survive on."
 {¶ 9} Appellant's employer treated this letter as a resignation and did not schedule him for any additional employment.
 {¶ 10} Appellant filed an application for temporary extended unemployment compensation for the week ending October 12, 2002.
 {¶ 11} As an initial determination, dated October 25, 2002, the Ohio Department of Job and Family Services found that appellant quit his employment with Cousins Basement without just cause. Accordingly, appellant's benefits were suspended, and the claim for the week ending October 12, 2002 was disallowed.
 {¶ 12} Appellant filed a timely appeal of that determination with the Ohio Department of Job and Family Services on October 31, 2002, and the appeal was referred to the Review Commission on November 12, 2002.
 {¶ 13} A telephone hearing was conducted on December 17, 2002, and the Review Commission issued a December 26, 2002 decision. The Review Commission affirmed the initial determination. The Review Commission stated that "[c]laimant quit his employment with Cousins Basement Waterproofing, Inc. without just cause. Claimant's benefits are suspended until claimant works in six weeks of covered employment, earns $1,032.00 or more and is otherwise eligible. The claim for the week ending October 12, 2002 shall remain disallowed."
 {¶ 14} Appellant requested that the Review Commission reconsider its decision. The Review Commission disallowed appellant's request on January 14, 2003. Pursuant to R.C.4141.282, appellant appealed to the Ashtabula County Court of Common Pleas.
 {¶ 15} The trial court issued a November 18, 2003 judgment entry, affirming the decision of the Review Commission. In its judgment entry, the trial court reviewed the facts relevant to the instant matter and noted that an individual is disqualified from receiving unemployment compensation benefits if he terminates employment without just cause. The court also acknowledged that the Supreme Court of Ohio held in Kontner v.Bd. of Rev. (1947), 148 Ohio St. 614, that an employee who terminates his employment due to lack of transportation is considered to quit without just cause. Accordingly, the trial court stated that the decision of the Review Commission was not unlawful, unreasonable, or against the manifest weight of the evidence. The trial court affirmed the decision of the Review Commission and dismissed appellant's appeal with prejudice at his costs.
 {¶ 16} From this judgment, appellant appeals and sets forth the following assignments of error:
 {¶ 17} "[1.] The Common Pleas Court (Trial court) erred to the prejudice of the plaintiff-appellant, by failing to find that the decision of defendant's referee was unlawful, first and foremost; since O.R.C. 4141.29 does not impose a disqualification of benefits upon appellant per 4141.29(D)(2)(a), when appellant exercises his right granted to him by his labor agreement to apply the exception to 4141.29(D)(2)(a) per O.R.C.4141.29(D)(2)(B)(i).
 {¶ 18} "[2.] The trial court erred to the prejudice of appellant, by failing to find the decision of defendant's referee was contrary to the evidence and therefore unsupported and contradicted by the evidence. Similarly, the trial court's judgment entry is blatantly unsupported and contradicted by the evidence. Therefore, trial court's decision is errant and prejudice [sic] to appellant."
 {¶ 19} We apply the same standard as the trial court when reviewing the Review Board's just cause determination. Tzangas,Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, 696-697, 1995-Ohio-206. "An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." Id. at paragraph one of the syllabus. See, also, R.C. 4141.282(H).
 {¶ 20} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, at syllabus; Seasons Coal Co., Inc.v. Cleveland (1984), 10 Ohio St.3d 77, 80. The trier of fact is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." SeasonsCoal at 80. As such, evaluating the evidence and assessing the credibility of the witnesses are the primary function of the trier of fact, and not of a reviewing court. Yuhasz v.Mrdenovich (1992), 82 Ohio App.3d 490, 492.
 {¶ 21} Because appellant's two assignments of error implicate similar issues, we will address them in a consolidated fashion. In his assignments or error, appellant argues that he exercised a right granted to him under a labor agreement, and the trial court erred by concluding that appellant quit his employment with Cousins Basement without just cause. Specifically, appellant contends that the "labor agreement" is the letter he wrote to his employer, dated June 2002, explaining his transportation difficulties, apologizing for missing work, and indicating that he would continue to try to report to work when he had reliable transportation. Appellant's assignments of error are without merit.
 {¶ 22} R.C. 4141.29(D) provides:
 {¶ 23} "Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:
 {¶ 24} "* * *
 {¶ 25} "(2) For the duration of the individual's unemployment if the director finds that:
 {¶ 26} "(a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * *."
 {¶ 27} Just cause "is that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine v. Unemployment Comp. Bd. of Rev.
(1985), 19 Ohio St.3d 15, 17. Just cause must be determined on a case-by-case basis. Id.
 {¶ 28} However, pursuant to R.C 4141.29(D)(2)(b)(i), an individual who refuses, without just cause, to accept an offer of suitable work can receive benefits when work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement, or pursuant to an established employer plan, program or policy.
 {¶ 29} Pursuant to the record in this case, there was no burden on the employer to offer continued employment to appellant.
 {¶ 30} In the instant matter, appellant argues that the termination of his employment, on or about October 7, 2002, was in accord with a "labor agreement" between him and his employer. Specifically, appellant contends that the letter, dated June 2002, from him to Cousins Basement, apologizing for missing work and stating that he would continue to try to report to work when he had reliable transportation, constituted a "labor agreement." This "labor agreement," in essence, would have permitted appellant to report to work only when he could get there. Appellant argues that because he terminated his employment pursuant to R.C. 4141.29(D)(2)(b), he is entitled to unemployment compensation.[1]
 {¶ 31} Our analysis of appellant's two assignments of error turns on whether this June 2002 letter constitutes an enforceable "labor agreement." R.C. Chapter 4141 does not define "labor agreement." Regardless, this letter is only an illusory promise and does not constitute a valid contract, and, therefore, it cannot be enforceable as a "labor agreement" pursuant to R.C.4141.29(D)(2)(b).
 {¶ 32} "A contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory." Century21 Am. Landmark, Inc. v. McIntyre (1980), 68 Ohio App.2d 126,129-130, citing 1 Williston on Contracts (3 Ed. 1957), 140, Section 43. If a promise is illusory, of course, then the contract is not enforceable. Id; 17 American Jurisprudence 2d (1964) 419 Contracts, Section 79. "`An apparent promise which according to its terms makes performance optional with the promisor * * * is in fact no promise, although it is often called an illusory promise.'" Andreoli v. Brown (1972),35 Ohio App.2d 53,55, quoting Restatement of the Law, Contracts (1925), Section 2, Comment b.
 {¶ 33} Appellant's June 2002 letter is a classic illusory promise. According to the letter, appellant possessed an unlimited right to determine which days he would appear for work. Performance on behalf of appellant was clearly optional, and the letter did not form a valid contract. Because there existed no "labor agreement," we must follow Kontner and conclude that there existed competent, credible evidence supporting the trial court's determination that appellant terminated his employment without just cause and was not entitled to unemployment compensation.
 {¶ 34} The decision of the hearing officer was not unlawful, unreasonable, or against the manifest weight of the evidence. Appellant's two assignments of error are without merit, and we hereby affirm the judgment of the trial court.
Ford, P.J., O'Neill, J., concur.
[1] There exists an inherent inconsistency in appellant's argument. Appellant argues that he terminated his employment pursuant to a "labor agreement" and, thus, is entitled to unemployment compensation. Assuming arguendo that this letter constituted a valid agreement permitting appellant to appear for work only when his transportation so allowed, appellant's October 7, 2002 letter manifested appellant's intention to actually begin a leave of absence until he could secure reliable transportation. Following this logic, appellant could not have intended to "terminate" his employment. As such, appellant would not have been unemployed, and he would not have been eligible to receive unemployment compensation.