OPINION
{¶ 1} This case involves consolidated appeals by Thomas G. Burns and Perry McClain, on behalf of General Motors Corporation employees, (collectively "appellants"). This court consolidated the appeals sua sponte on July 27, 2004. Appellants appeal from a judgment of the Trumbull County Common Pleas Court affirming a decision of the Ohio Unemployment Compensation Review Commission ("Review Commission"), in which it affirmed a determination by the Director of the Ohio Bureau of Employment Services, disallowing appellants' claims for unemployment compensation benefits for the week ending July 4, 1998.
 {¶ 2} The following background facts are undisputed. In 1998, employees at General Motors Corporation ("GM") facilities in Michigan went on strike. Eventually, the strike caused a shortage of parts at GM's Trumbull County facilities. Production was halted and 8,136 employees (appellants within this appeal) were laid off. Appellants were on lay off status during the week ending July 4, 1998. Appellants filed for unemployment compensation, and were not recalled to return to work until sometime after August 1, 1998.
 {¶ 3} As a part of the settlement of the Michigan strike, GM and the United Auto Workers Union ("UAW"), entered into a Memorandum of Understanding ("MOU") on July 28, 1998. The MOU provided:
 {¶ 4} "MEMORANDUM OF UNDERSTANDING ONE TIME SPECIAL PAYMENT"
 {¶ 5} "As a result of these negotiations and without prejudice to the position taken by either party, and without setting any precedent in the disposition of any other case involving similar circumstances, the parties agree to the following:
 {¶ 6} "Employees who were on strike or layoff status at General Motors locations due to the labor dispute at the Flint Metal Center and Delphi E. Flint East and who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM-UAW National Agreement, shall receive a one time special payment in the amount they would have been entitled to had they not been on strike or layoff. This payment will be made in an expeditious manner and taxed as a regular wage payment in accordance with Document No. 81 of the GM-UAW National Agreement. This payment shall initially be made by General Motors. Thereafter, payments otherwise required by Paragraph IIIA of the Memorandum of Understanding Joint Activities, 1996 GM-UAW National Agreement, shall be waived until General Motors is reimbursed for the total amount paid to employees as a result of this Memorandum. Further, the parties recognize that these payments may result in employees being ineligible for unemployment compensation already received. Employees impacted by such overpayment of unemployment compensation will be responsible to repay the State that provided the unemployment compensation."
 {¶ 7} Appellants were advised of the holiday pay restoration, pursuant to the MOU, by union fliers distributed on August 5, 1998, and a UAW newsletter. Payments for the Independence Holiday Shutdown were made on August 13, or August 14, 1998, calculated to equal thirty-two hours of a claimant's base salary for the period of June 29 through July 3. Payment for the July 4th holiday made at the same time, represented eight hours at the same rate of pay as that of the same week. The replacement holiday pay was identified separately from regular wages on appellants' pay stubs and was separately subjected to payroll taxes. All payments were subject to payroll withholding taxes.
 {¶ 8} Appellants became eligible to receive unemployment compensation benefits when they were laid off by GM, from the date each was laid off until he or she was recalled to work. GM subsequently objected to payment of benefits for the period June 29 through July 3, 1998, arguing that the one time special payment each claimant received pursuant to the MOU was remuneration that disqualified them from receiving benefits. On review, the Director of the Department of Job and Family Services ("Director") agreed and disallowed benefits for the period June 29 through July 3, 1998.
 {¶ 9} Appellants and other claimants appealed the Director's decision to the Review Commission. On December 12, 2002, the Review Commission rendered a decision disallowing benefits for the period concerned, pursuant to R.C. 4141.31(A)(5). In its decision, the Review Commission stated:
 {¶ 10} "The question to be determined by the Review Commission is whether the monies received by claimants are deductible as remuneration in the form of holiday pay. This special payment was negotiated by General Motors Corporation and the United Auto Workers. The weight of the evidence before the Review Commission is that the purpose of this payment was to replace the lost Independence Week Shutdown Period pay and Independence Holiday pay. Certain prerequisites for receiving this pay could not be met by employees because of the strikes and layoff situations existing at the time. In the negotiation process, it appears that the parties agreed to waive these impossible prerequisites and pay the unemployed workers a special payment calculated to make them whole for loss of the holiday payments. Deductions were made by the employer in the same manner as regular holiday payments would have been handled and employees received credit, including additional vacation entitlement, under the National Agreement for these monies. The circumstances which allowed the employer to recoup these monies via reduced contributions to another fund does not alter the nature of the payments. That the parties believed and intended these payments to replace the Independence Week Holiday pay is evidenced by Employer Exhibit #1, Shop Committee-Information Flyer, issued August 5, 1998, wherein the following statement was made: `Independence Week Holiday Pay. The International Union and Corporation have agreed to pay the negotiated settlement concerning the Independence Week Shutdown Week. This payment will be included in the regular payroll checks on August 14, 1998. Even though you only receive one check, taxes will be deducted from the individual amounts of the two weeks, as per your regular payroll tax status.' Based upon the weight of the evidence before the Review Commission, it is held that the Director properly disallowed all claims for the weeks in issue because claimants received remuneration in the form of holiday pay or allowance in excess of their weekly benefit amount."
 {¶ 11} Appellants appealed the Review Commission's decision to the Trumbull County Court of Common Pleas. On May 20, 2004, the court entered a judgment entry affirming the decision of the Review Commission. Appellants filed a timely notice of appeal. In their consolidated appeal, appellants present five assignments of error for our review:
 {¶ 12} "[1.] The trial court erred in affirming the Decision of the Review Commission denying benefits to claimants because they were totally unemployed under Revised Code Section 4141.01(M).
 {¶ 13} "[2.] The trial court erred in affirming the decision of the Review Commission denying benefits to claimants because the one-time special payment was not holiday pay under section 4141.31(A)(5) and could not be allocated to the week ending July 4, 1998.
 {¶ 14} "[3.] The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimants because the special payment was not remuneration under Revised Code Section 4141.01(H).
 {¶ 15} "[4.] The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimant's, where the special payment was a form of bonus, that could not be used to reduced benefits under Section 4141.31(A)(5).
 {¶ 16} "[5.] The Trial Court did not liberally construe under R.C. 4141.46 the Appellants' claims for unemployment benefits."
 {¶ 17} Appellants' five assignments of error are intertwined and will be considered together. At the outset, it should be noted that, in Ohio, unemployment compensation is a statutory scheme governed by R.C. 4141. The standard of review in cases arising under Ohio's Unemployment Compensation Statute is set forth in R.C. 4141.282(H) and states as follows: "If a trial court, upon appeal of a decision of the commission, finds that the commission's decision was "unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission." The same standard applies to an appellate court's review.
 {¶ 18} An appellate court may reverse the Unemployment Compensation Board of Review's decision only if it is unlawful, unreasonable or against the manifest weight of the evidence. Tzangas, Plakas Mannosv. Ohio Bur. of Emp. Services (1995), 73 Ohio St.3d 694, at paragraph one of the syllabus. In Simon v. Lake Geauga Printing Co. (1982),69 Ohio St.2d 41, the Supreme Court of Ohio reasoned that the Review Commission is in the best position to weigh evidence and assess the credibility of the witnesses. See, also, Shaffer v. State of OhioUnemployment Rev. Comm., 11th Dist. No. 2003-A-0128, 2004-Ohio-6956; Boosv. Admr, Ohio Bur. of Unemployment Services, 11th Dist. No. 2003-T-0174, 2004-Ohio-6693.
 {¶ 19} In their first assignment of error, appellants argue that they were "totally unemployed" according to R.C. 4141.01(M), which provides as follows: "an individual is `totally unemployed' in any week during which the individual performs no services and with respect to such week no remuneration is payable to the individual." Thus, "if a claimant either performs services, or receives remuneration, he is not unemployed within the foregoing statute." In re DeLuca (June 19, 1979), 10th Dist. No. 79AP-28, 1979 Ohio App. LEXIS 11570, at 7. See, also, Rini v.Unemployment Comp. Bd. of Rev. (1983), 9 Ohio App.3d 214, at paragraph one of the syllabus.
 {¶ 20} Pursuant to R.C. 4141.01(H), "`[r]emuneration' means all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash[.]"
 {¶ 21} We note that subsequent to the filing of briefs, the Fifth District in Futey v. Ohio Dept. of Job Family Services, 5th Dist. No. 04-CA-14, 2004-Ohio-5400, the Second District in Ashwell v. Ohio Dept. ofJob Family Services, 2nd Dist. No. 20522, 2005-Ohio-1928, and the Tenth District in Nicolas v. Ohio Dept. of Job Family Services, 10th Dist. No. 04AP-771, 2005-Ohio-2635, all rendered decisions affirming trial court decisions that affirmed the Review Commission's determination that GM's one time special payment in August 1998 was holiday pay remuneration for the Fourth of July holiday. Thus, appellants were denied unemployment compensation benefits for the week ending July 4, 1998. We also note that the appellants in Futey appealed that decision, but the Ohio Supreme Court declined further review.
 {¶ 22} Here, the trial court found that the language of the MOU, as well as other factors, supported the Review Commission's determination that the parties intended to have the one time special payment replace the lost Independence Week Holiday pay, and that it was properly allocated to the Independence Day Holiday week. The court concluded that "the determination of the Review Commission * * * was lawful, reasonable, and not contrary to law." The court found that the evidence, including stipulated facts in the record, supported the Review Commission's determination that the parties to the MOU intended to have the one time special payment replace the Independence Day shutdown. The court further held that "the ODJFS believed as does this Court, that there is no evidence that appellants' employers intended to make a gift of the one time `special payment'." The court also found that the terms of the MOU "clearly set forth the employees obligation to re-pay any over payments to the state and that the payment may make them ineligible for benefits for the week in question." In affirming the decision of the Review Commission, the court concluded that "this payment is indeed holiday pay and the contractual shutdown pay [a]ppellants would have received had they worked the obligated day before and after the holiday."
 {¶ 23} Upon a review of the record in this case, we agree. Here, the MOU specifically referenced the fact that the one time special payment was for employees on strike or layoff status due to the Flint labor dispute "who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM-UAW National Agreement[.]" The MOU further provided that the parties "recognize that these payments may result in employees being ineligible for unemployment compensation already received."
 {¶ 24} GM classified the 32-hour payments in its records as "MISCIWSP," and the eight-hour payment as "MISCHOSP," which the court inFutey reasonably interpreted as "miscellaneous independence week special pay" and "miscellaneous holiday special pay." Futey at ¶ 21.
 {¶ 25} Appellants contend that no remuneration was "payable" to them during the week ending July 4, 1998, because they could not meet, under the national agreement, the prerequisites for receiving the payments, i.e., due to the strike, they were unable to work the scheduled workday prior to and following the shutdown period and holiday.
 {¶ 26} Appellants maintain that it was not until after the MOU was executed (on July 28, 1998) that any amount was payable and that GM "allocated" the payment to the week of August 9, 1998, when the checks were issued. Thus, appellants assert that the one time special pay cannot be allocated to the work week ending on July 4, 1998.
 {¶ 27} Appellants urge this court to follow the decision in GeneralMotor's Corp. v. Buckner (Mo.App. 2001), 49 S.W.3d 573, wherein a Missouri Court of Appeals held that unemployment compensation claims arising out the same circumstances should be paid. However, in Buckner,
the court relied upon a statutory provision not present in Ohio's Unemployment Statutory Scheme providing that "[v]acation pay and holiday pay shall be considered as wages for the week with respect to which it is payable." Mo.Rev.St. 288.036.1. Ohio's statutory scheme provides in part that "[r]emuneration in the form of holiday pay will be applied to the week during which the holiday occurs * * * regardless of when such remuneration is actually received." Ohio Adm. Code 4141-9-05. Further, we agree with the Buckner court that "[d]ue to the fact that the types of statutes involved in the various states are not uniform, but frequently divergent, we do not consider authorities from other jurisdictions decisive of this matter." Id., at 759.
 {¶ 28} Under Ohio law, the date of allocation is not determined by the date on which the payment was received. Pursuant to R.C. 4141.31(A)(5), benefits otherwise payable for any week are to be reduced by the amount of remuneration a claimant receives with respect to "[v]acation pay or allowance payable under the terms of a labor-management contract or agreement * * * which payments are allocated to designated weeks."
 {¶ 29} The Director is authorized to "[a]dopt rules with respect to the collection, maintenance, and disbursement of unemployment and demonstrative funds[.]" R.C. 4141.13(C). Such rules must be approved by the Review Commission before they become effective. R.C. 4141.14(A). These rules are set forth at Ohio Adm. Code 4141-9.
 {¶ 30} Ohio Adm. Code 4141-9-04(B) provides in part: "[r]emuneration may be * * * denominated by terms such as vacation pay or allowance, separation pay, holiday pay, paid absence allowance, downtime paid absence allowance, or short workweek pay."
 {¶ 31} Ohio Adm.Code. 4141-9-05(A) further provides that "remuneration in the form of holiday pay will be applied to the week during which the holiday occurs as specified by state or national declaration, regardless of when such remuneration is actually received. If, however, there exists a written labor-management agreement to observe a holiday on a date other than the one specified by state or national declaration, the holiday pay will be applied to the week during which the date specified in the agreement occurs."
 {¶ 32} In construing the above statutory provisions to the same stipulated facts as the instant case, the court in Ashwell, held in relevant part: "The Independence Week Shutdown pay period identified in the National Agreement is the period of Monday, June 29 through Thursday, July 2, 1998. One of the holidays for which payment is specified by the National Agreement is July 4, 1998. The July 4 holiday was observed on Friday, July 3 in 1998. The MOU provides that eligible employees `shall receive a one time special payment in the amount they would have been entitled to receive had they not been on strike or layoff' during the Independence Week Shutdown and Holiday. Per O.A.C. 4141-9-05(A), the pay for the Independence Day holiday necessarily must apply to July 3, 1998, the last day of the Independence Week Shutdown and Holiday period that year." Id. at ¶¶ 57-59.
 {¶ 33} Here, as in Ashwell and Nicolas, the one time special payment was apportioned and paid to employees, who, but for their inability to work the required prior and subsequent shifts due to the layoff, would have been entitled to receive Independence Week Shutdown and Holiday Pay in 1998.
 {¶ 34} Further, there was evidence supporting the Review Commission's finding that the parties, through the MOU, agreed to waive certain prerequisites under the national agreement in order to provide these workers Independence Week Shutdown and Independence Day Pay. It is from the employment relationship that payment to the appellants arose. As a result of negotiation with the UAW, GM agreed that appellants would receive a payment that was intended to replace, in the same manner as the Independence Week Shutdown and Holiday Pay that appellants would have been eligible to receive for the week ending July 3, 1998, if the strike had not occurred and layoffs ensued.
 {¶ 35} We agree with the Ashwell court and Nicolas court that, under the facts of this case, the Review Commission could have reasonably concluded that the one time special payment was allocated to the Independence Week shutdown and Independence Day holiday, thereby constituting remuneration for purposes of R.C. 4141.31(A)(5) for the week ending July 4, 1998.
 {¶ 36} Appellants' reliance on Akzo Salt, Inc. v. Ohio Bur. of Emp.Services (1995), 107 Ohio App.3d 567, is misplaced. Unlike the case sub judice, in Akzo Salt, there was no evidence before the Review Commission of an MOU labor-management agreement that specifically allocated the payment to a designated week.
 {¶ 37} We further disagree with appellants' claim that the one time payment was a "bonus," that could not be used to reduce unemployment compensation pursuant to R.C. 4141.31(A)(5). Under "R.C. 4141.01(H)(2), a `bonus' is a form of remuneration, [and] therefore, payment of a bonus renders an employee, even one who is laid-off, ineligible for benefits because he is not then unemployed." Nicolas at ¶ 31, quoting Ashwell at ¶ 53.
 {¶ 38} Further, the express language of the MOU recognizes that both GM and the UAW were aware that appellant's receipt of this payment would affect eligibility for benefits for the week ending July 3, 1998. The MOU stated in pertinent part: "The parties recognize that these payments may result in employees being ineligible for unemployment compensation * * *." At the Review Commission hearing, GM representative Cheryl Ollila testified that the purpose of the special one time payment was to make appellants whole for the Independence Week Shut down period, and the intent of the MOU's phrase warning of ineligibility for unemployment benefits was: "[i]f it was determined by the state that they were ineligible as a result of an overpayment, they would have to pay this back." Thus, it is reasonable to conclude that both the UAW and GM, as parties to the MOU, intended the one time special payment as replacement holiday pay and recognized that the payment may result in reduced eligibility of employee recipients for unemployment compensation.
 {¶ 39} Appellants further raise the contention that, if the payment actually constituted holiday pay, GM would have been required to pay claimants from its general revenue. Appellants maintain, instead, that GM was "excused" from payment of its contractual obligation to the Joint Activities Fund.
 {¶ 40} The court in Ashwell also addressed and rejected this argument, noting, "R.C. 4141.31(A)(5) takes no account of the source of vacation pay or allowances, so long as the amount is payable under the terms of a labor-management agreement and allocated to designated weeks."Ashwell at ¶ 70. The court reasoned, "[r]eliance on the fact that the payment is the product of a labor-management agreement, as it was here, demonstrates that questions such as the source, amount, or payment terms are matters committed to the negotiating process, not ones that affect the application of R.C. 4141.31(A)(5)." Id.
 {¶ 41} Similarly, the Review Commission found that "the circumstances which allowed the employer to recoup these monies via reduced contributions to another fund does not alter the nature of the payments."
 {¶ 42} Appellants further contend that the Review Commission erred in relying upon evidence in the form of information contained in fliers distributed by the union and describing the payments as "Independence Week Shutdown." Although appellants do not present a specific argument on this issue, the Ashwell court found that this contention involved a claim of inadmissible hearsay. Ashwell at ¶ 75.
 {¶ 43} The hearing officer is not bound by "common law or statutory rules of evidence or by technical or formal rules of procedure." R.C.4141.28(J); Simon at ¶ 43. "The aim of this portion of R.C. 4141.28(J) is to avoid the rigid formality imposed by technical rules of evidence, while constructing an efficient method for ascertaining a claimant's entitlement to unemployment compensation benefits." Id. Therefore, hearsay evidence which is inadmissible in a court or hearing required to apply stringent rules of evidence, is admissible in the Review Commission's hearings on whether to affirm or reverse a decision granting or denying unemployment benefits. Id. at ¶ 44.
 {¶ 44} We further find that it is undisputed that a local union representative distributed the flyer to union members. On this point, theAshwell court held that the statements in the union flier qualified as non-hearsay admissions of a party-opponent under Evid.R. 801(D)(2)(d), and the trial court properly viewed the admission of the flier as evidence of what the UAW, as appellants' representative, thought and intended with respect to the MOU and one time special payments. Id. at ¶ 76. We agree.
 {¶ 45} Furthermore, as this court has previously stated "we are required to give great deference to the hearing officer's findings of fact." Boos at ¶ 22, citing Todd v. Admr, Ohio Dept. of Job and FamilyServices, 4th Dist. No. 03 CA 2894, 2004-Ohio-2185, at ¶ 26. Thus, it would be inappropriate to disregard the findings of the Review Commission because they are based partially on the union fliers.
 {¶ 46} Appellants' final assignment of error is that the Review Commission failed, pursuant to R.C. 4141.46, to liberally construe R.C. 4141.
 {¶ 47} Although unemployment compensation statutes are to be liberally construed, neither the agency nor the trial court has a duty to construefacts more favorably to either party. Dailey v. Admr. Ohio Bur. of Emp.Services, 8th Dist. No. 52633, 1987 Ohio App. LEXIS 5607. Further, "[a] direction to liberally construe a statute in favor of certain parties will not authorize a court to read into the statute something which cannot be reasonably be implied from the language of the statute." Thomasv. Stringer, (May 27, 1995), 11th Dist. No. 5-127, 1975 Ohio App. LEXIS 8389, at 4, quoting Szekely v. Young (1963), 174 Ohio St. 213, 218.
 {¶ 48} This court recognizes the commitment of the UAW in its representation on behalf of the appellants. However, under Tzangas, we are unable to speculate as to the reason why appellants did not fully appreciate the terms of the MOU and that such payment may result in reduction of unemployment compensation benefits.
 {¶ 49} In its application of the statutes and regulations to the facts, we agree with the trial court that the Review Commission's decision was not unreasonable, unlawful, or against the manifest weight of the evidence. Thus, we do not find that the Review Commission violated the principle of R.C. 4141.46.
 {¶ 50} For the foregoing reasons, appellants' five assignments of error are without merit.
 {¶ 51} The judgment of the Trumbull County Court of Common Pleas is affirmed.
Ford, P.J., O'Neill, J., concur.