BROWN et al., Appellants,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellees. (Two Cases).

[Cite as *Brown v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 311, 2005-Ohio-5887.]

Court of Appeals of Ohio, Third District, Defiance County.

Nos. 4–05–07 and 4–05–08.

Decided Nov. 7, 2005.

312

Frederick G. Cloppert Jr., William J. Steele, and Rory P. Callahan, for appellants.

Charlett Bundy, Assistant Attorney General, for appellee Ohio Department of Job and Family Services.

Jones Day and Laura R. Anderson, for appellee General Motors Corporation.

SHAW, Judge.

{¶ 1} Appellants, several thousand autoworkers who were laid off by General Motors ("GM") in June 1998, appeal the judgment of the Court of Common Pleas, Defiance County, Ohio. That judgment affirmed the decision of the Ohio Unemployment Compensation Review Commission that denied appellants' unemployment benefits for the week ending July 4, 1998. Upon review, we find no error in the trial court's decision and therefore affirm the judgment from which this appeal was taken.

{¶ 2} The factual background of this case is undisputed between the parties. Appellants are members of the United Auto Workers ("UAW") labor union, and were employed at GM plants in Defiance County in 1998. In June of that year, employees at two GM facilities in Flint, Michigan went on strike, resulting in parts shortages throughout the region. As a result, GM was forced to shut down several facilities throughout Ohio and place the employees on layoff status at those facilities. This mass layoff affected some 14,000 UAW members throughout Ohio; facilities in six Ohio counties were shut down, and appellants were laid off at various times from June 5, 1998, through August 3, 1998. Specifically with regard to this appeal, all appellants were on layoff during the week ending July 4, 1998.

{¶ 3} Appellants' employment relationship with GM was governed by a National Collective Bargaining Agreement ("national agreement") entered into between GM and UAW in November 1996. This agreement was still in effect during the layoff in 1998. The national agreement gave certain employees time off during a four-day period in 1998 from Monday, June 29 to Thursday, July 2 as "Independence Week shutdown period," and on Friday, July 3 the company observed the Independence Day holiday. Pursuant to the national agreement, GM agreed to pay employees at their regular rate of pay for time off during the shutdown period if they met certain conditions. The parties agree that in 1998, due to the layoffs resulting from the strike in Flint, Michigan, it was impossible for

appellants to meet the requirements to receive shutdown pay, because they did not work the day before and the day after the Independence Day holiday.

{¶ 4} The strike ended in late July 1998, and the plants in Ohio began to reopen; appellants returned to work beginning in early August. As part of the strike settlement, GM and UAW entered into a memorandum of understanding dated July 28, 1998. In the memorandum, GM agreed to pay each of the UAW employees affected by the strike and the resulting layoff the holiday pay they would have received during the Independence Week shutdown:

As a result of these negotiations and without prejudice to the position taken by either party, and without setting any precedent in the disposition of any other case involving similar circumstances, the parties agree to the following:

Employees who were on strike or layoff status at General Motors locations due to the labor dispute at the Flint Metal Center and Delphi E. Flint East and who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM–UAW National Agreement, shall receive a one time special payment in the amount they would have been entitled to had they not been on strike or layoff.

This payment will be made in an expeditious manner and taxed as a regular wage payment in accordance with Document No. 81 of the GM–UAW National Agreement.

This payment shall initially be made by General Motors. Thereafter, payments otherwise required by Paragraph IIIA of the Memorandum of Understanding Joint Activities, 1996 GM–UAW National Agreement, shall be waived until General Motors is reimbursed for the total amount paid to employees as a result of this Memorandum.

Further, the parties recognize that these payments may result in employees being ineligible for unemployment compensation already received. Employees impacted by such overpayment of unemployment compensation will be responsible to repay the State that provided the unemployment compensation.

{¶ 5} This "one time special payment" was paid to appellants on August 13 or 14 with their regular pay. It was handled in the same manner as all regular holiday payments, including regular tax deductions and deductions for union dues. Additionally, all employees maintained seniority status and were credited with the Independence Week shutdown period for seniority purposes.

{¶ 6} Thereafter, appellants applied for unemployment compensation benefits for the entire layoff period. GM subsequently objected to the payment of unemployment benefits for the Independence Week shutdown period, arguing that the one-time special payment agreed to in the memorandum constituted

remuneration, which disqualified them from receiving unemployment benefits for that week. The Ohio Bureau of Employment Services agreed with GM and denied benefits for that week. On appeal, the Ohio Unemployment Compensation Review Commission affirmed, holding that "the Director properly disallowed all claims for the week in issue because Appellants received remuneration in the form of holiday pay or allowance in excess of their weekly benefit amount." Appellants then appealed to the Defiance County Court of Common Pleas pursuant to R.C. 4141.282(A); and the court affirmed the review commission's decision. Appellants now appeal to this court asserting four assignments of error:

The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimants because they were totally unemployed under Revised Code Section 4141.01(M).

The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimants because the one-time special payment was not holiday pay under Section 4141.31(A)(5) and could not be allocated to the week ending July 4, 1998.

The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimants because the special payment was not remuneration under Revised Code Section 4141.01(H).

The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimants, where the special payment was a form of bonus that could not be used to reduce benefits under Section 4141.31(A)(5).

{¶ 7} All of appellants' assignments of error are interrelated, and therefore we will address them together. In their assignments of error, appellants challenge the commission's determination that the one-time special payment was remuneration in the form of vacation pay pursuant to R.C. 4141.31(A)(5).

{¶ 8} When reviewing a decision by the commission, courts in Ohio are governed by R.C. 4141.282(H). That section provides that the court of common pleas shall reverse the commission's decision only if it finds "that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence." Appellate courts are to apply the same standard of review as the trial court. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 697, 653 N.E.2d 1207. Thus, "while appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the [commission's] decision is supported by the evidence in the record." Id. at 696, 653 N.E.2d 1207.

{¶ 9} After reviewing the record, we agree with the other appellate courts in Ohio that have addressed this issue. As previously noted, the UAW strikes in

Michigan affected plants across Ohio, and union workers in six different Ohio counties have filed unemployment-compensation claims. Appeals by these claimants have reached three other appellate courts, and decisions affirming the commission's ruling have been rendered by the Second, Fifth, and Tenth District Courts of Appeals. *Futey v. Ohio Dept. of Job & Family Servs.*, 5th Dist. No. 04 CA 14, 2004-Ohio-5400, 2004 WL 2260113; *Ashwell v. Ohio Dept. of Job & Family Servs.*, 2nd Dist. No. 20522, 2005-Ohio-1928, 2005 WL 940901; *Nicolas v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP–771, 2005-Ohio-2635, 2005 WL 1252404. For the following reasons, we also affirm the ruling of the commission denying appellants unemployment benefits for the week ending July 4, 1998.

{¶ 10} Ohio's unemployment-compensation scheme is delineated by statute in R.C. Chapter 4141. That chapter provides that "each eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment." R.C. 4141.29. A person is defined as being "totally unemployed" if there is a week "during which the individual performs no services and with respect to such week no remuneration is payable to the individual." R.C. 4141.01(M). Thus, an individual may receive benefits due to "total unemployment" only if he (1) performed no services and (2) received no remuneration. *Nicolas*, 2005-Ohio-2635, 2005 WL 12624, supra at ¶ 19; see also *In re DeLuca* (June 19, 1979), 10th Dist. No. 79AP–28, 1979 WL 209120; *Rini v. Unemp. Comp. Bd. of Review* (1983), 9 Ohio App.3d 214, 215, 9 OBR 364, 459 N.E.2d 602.

{¶ 11} It is clear that appellants did perform services for GM during the week in question, even though the record indicates that they did not engage in any productive activity for GM during that week. "Personal services" are not limited to engaging in productive activity. *United Steelworkers of Am. AFL–CIO v. Doyle* (1958), 168 Ohio St. 324, 7 O.O.2d 41, 154 N.E.2d 623. As the court found in *Ashwell*, 2005-Ohio-1928, 2005 WL 940901, monies received while an individual retains an employment relationship are paid for services:

> When a laid-off employee retains his status as an available employee, retains his seniority, pension rights and any right to severance pay, and registers and reports for state compensation, any compensation he is paid by his employer is for his services. Id. Thus, personal service "means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer."

*Ashwell* at ¶ 44 (quoting *Doyle* at 327, 7 O.O.2d 41, 154 N.E.2d 623). There was sufficient evidence in the record to demonstrate that appellants maintained their employment relationship with GM: they retained seniority status and pension rights, the week in question was credited to their seniority status, and the

payment they received for that week was reported as regular compensation. Thus, we agree with the Second District that the claimants in these cases were not "totally unemployed" as defined in R.C. 4141.01(M).

{¶ 12} Finally, even if benefits were originally available to appellants for the week ending July 4, the one-time special payment eliminated the availability of those benefits pursuant to R.C. 4141.31(A)(5). That section provides that unemployment benefits "shall be reduced by the amount of remuneration a claimant receives * * * as [v]acation pay or allowance payable under the terms of a labor-management contract or agreement * * *, which payments are allocated to designated weeks." The commission determined that the one-time special payment was issued as a substitute for the lost pay appellants would have received for the Independence Week shutdown. Therefore, because the payment received under the memorandum was more than appellants' benefit, they were not entitled to any benefits for that week.

{¶ 13} It is clear that appellants received remuneration in the instant case. The Revised Code defines "remuneration" as "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash * * *." R.C. 4141.01(H)(1). As we previously held, the compensation appellants were paid was for personal services; this compensation clearly meets the definition of "remuneration" contained in R.C. 4141.01(H)(1). The only remaining issues regarding the applicability of R.C. 4141.31(A)(5) is whether that remuneration (1) was a vacation pay or allowance, (2) payable under the terms of a labor-management relations agreement, and (3) allocated to specific weeks.

{¶ 14} The record supports the commission's decision on this issue as well. First, the memorandum clearly qualifies as a "labor-management relations agreement." Second, the memorandum allocated the payment received to the Independence Week shutdown; it expressly indicated that the one-time special payment was to replace the compensation appellants would have received during the shutdown week. Third, we agree with the other Ohio appellate courts that the record supports the commission's conclusion that this payment constituted a replacement for lost vacation pay: "there was evidence supporting the review commission's finding that the parties, through the [memorandum], agreed to waive certain prerequisites under the national agreement that stood in the way of granting these workers Independence Week shutdown and Independence Day holiday pay." *Nicolas*, 2005-Ohio-2635, 2005 WL 1252404, at ¶ 24; see, also, *Ashwell*, 2005-Ohio-1928, 2005 WL 940901, at ¶ 57–59. The evidence illustrates that both UAW and GM recognized the payment as being for the Independence Day holiday:

UAW newsletters announcing the settlement referred to the payments as Independence Week holiday pay. GM classified the thirty-two-hour payments [for Monday, June 28 to Thursday, July 2] in its own records as "MISCIWSP," which * * * translated as miscellaneous independence week special pay. The eight-hour payments [for Friday, July 3] were listed in GM records as "MISCHOSP," which * * * translated as miscellaneous holiday special pay. * * * [B]oth GM and the UAW viewed the one-time payment as Independence week pay.

*Futey,* 2004-Ohio-5400, 2004 WL 2260113, at ¶ 21.

{¶ 15} Accordingly, the commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence. Appellants' assignments of error are overruled, and the decision of the trial court is affirmed.

Judgment affirmed.

CUPP, P.J., and ROGERS, J., concur.