RODRIGUEZ et al., Appellees,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellants.

[Cite as *Rodriguez v. Ohio Dept. of Job & Family Servs.,* 165 Ohio App.3d 546, 2006-Ohio-97.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 86111 and 86134.

Decided Jan. 12, 2006.

548

Cloppert, Latanick, Sauter & Washburn, Rory P. Callahan, Frederick G. Cloppert Jr., and William J. Steele, for appellees.

Jones Day, Barbara J. Leukart, and Laura R. Anderson, for appellant General Motors Corp.

Jim Petro, Attorney General, Betsey Nims Friedman, and David E. Lefton, Senior Assistant Attorneys General, and Charlett Bundy, Assistant Attorney General, for appellant ODJFS.

---

COLLEEN CONWAY COONEY, Presiding Judge.

{¶ 1} In this consolidated appeal, defendants-appellants, Director, Ohio Department of Job and Family Services ("ODJFS") and General Motors ("GM"), appeal the trial court's decision reversing the judgment of the Ohio Unemployment Compensation Review Commission. Finding merit to the appeal, we reverse the trial court's decision.

{¶ 2} The parties stipulated to the procedural history and facts of this case. In 1998, employees at two GM facilities in Michigan went on strike. The strike caused a shortage of parts, and as a result, GM laid off employees, including those involved in the instant case, who worked·at the Parma facility ("employees").

{¶ 3} During this time, GM and the employees, as members of the United Auto Workers ("UAW") were operating under a National Collective Bargaining Agreement ("Agreement"). Pursuant to the Agreement, the period from June 29 to July 2, 1998 was designated as the "Independence Week Shutdown Period" and July 3 was the "Independence Day Holiday." In the Agreement, GM agreed to pay employees during the shutdown and holiday if certain criteria were met. One criterion was that the employee had to work the scheduled day before and the day after the shutdown period. However, because of the layoff, the employees could not meet this criterion because they were not working.

{¶ 4} In July 1998, the strike ended and a settlement was reached. As part of the settlement, GM agreed to pay each UAW employee, either on strike or laid off as a result thereof, a special one-time payment ("special payment") equal to the shutdown week and holiday pay for which they would have been eligible but for the strike. This special payment was explained in a Memorandum of Understanding ("MOU"):

As a result of these negotiations and without prejudice to the position taken by either party, and without setting a precedent in the disposition of any other case involving similar circumstances, the parties agree to the following:

Employees who were on strike or layoff status at General Motors locations due to the labor dispute at the Flint Metal Center and Delphi E Flint East and who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM–UAW National Agreement, shall receive a one-time special payment in the amount they would have been entitled to had they not been on strike or layoff.

This payment will be made in an expeditious manner and taxed as a regular wage payment in accordance with Document No. 81 of the GM–UAW National Agreement.

This payment shall initially be made by General Motors. Thereafter, payments otherwise required by Paragraph III.A. of the Memorandum of Understanding Joint Activities, 1996 GM–UAW National Agreement, shall be waived until General Motors is reimbursed for the total amount paid to employees as a result of this Memorandum.

Further, the parties recognize these payments may result in employees being ineligible for unemployment compensation already received. Employees impacted by such overpayment of unemployment compensation will be responsible to repay the State that provided the unemployment compensation.

{¶ 5} This special payment was received by the employees on August 13 or 14, 1998, along with their regular pay for the payroll period ending August 9, 1998.

{¶ 6} The employees applied for unemployment compensation benefits for the entire period of their layoff. GM contended that the special payment constituted holiday pay, which was equivalent to their full pay for the week of July 4. Thus, the employees would not be entitled to unemployment compensation benefits for that week. The employees responded that the payment provided by the MOU between the UAW and GM was a "special payment," which should not prevent their receiving full unemployment compensation for the July 4 week.

{¶ 7} The Ohio Bureau of Employment Services agreed with GM and issued a determination of benefits denying the claims for unemployment benefits for the week ending July 4, 1998.[1] The Ohio Unemployment Review Commission ("commission") reviewed the matter and issued its decision affirming the bureau "because claimants received remuneration in the form of holiday pay or allowance in excess of their weekly benefit amount."

{¶ 8} The employees appealed this decision to the court of common pleas. The trial court reversed the commission's decision and determined that the special payment did not constitute remuneration and that the employees were entitled to one week of unemployment compensation benefits.

{¶ 9} GM and ODJFS appeal, raising two and four assignments of error respectively, as set forth in the appendix of this opinion. Because these assigned errors are interrelated, they will be considered together. Appellants substantively argue that the trial court erred in reversing the commission's decision disallowing the employees' claims for unemployment compensation.

{¶ 10} R.C. 4141.282 governs the standard of review for decisions by the commission. Pursuant to subsection (H), the court of common pleas shall reverse the commission's decision only if it finds that "the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence." Appellate courts are to apply the same standard of review as the trial court. *Brown v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 311, 2005-Ohio-5887, 842 N.E.2d 108, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 697, 653 N.E.2d 1207. " '[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the [commission's] decision is supported by the evidence in the record.' " *Tzangas*, 73 Ohio St.3d at 696, 653 N.E.2d 1207, quoting *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18, 19 OBR 12, 482 N.E.2d 587.

{¶ 11} The trial court reversed the commission's decision, finding that it was unlawful, unreasonable, and against the manifest weight of the evidence. It

---

1. The Ohio Bureau of Employment Services is now part of ODJFS.

concluded that the employees should receive a week of unemployment benefits. In the court's very brief analysis, it determined that no personal services were performed by the employees for the week ending July 4, 1998, and therefore, pursuant to R.C. 4141.01(M), the employees were totally unemployed and no remuneration was paid to them.

> The Court finds that the one-time special payment was made as part of the strike settlement within the Memorandum of Understanding. Until the parties signed the Memorandum of Understanding, the [employees] had no rights to the one-time special payment. As such, it was not a wage or retroactive pay of any kind; the [employees] performed no personal services for the one-time special payment.

{¶ 12} Appellants argue that the trial court erred in reversing the commission's decision because credible evidence existed to support the commission's decision that the special payment made to the employees was remuneration in the form of holiday pay or allowance payable with respect to the week ending July 4, 1998. We agree.

{¶ 13} Other appellate districts have previously decided the issues before this court based on the same stipulated facts. The Second, Third, Fifth, Tenth, and Eleventh Appellate Districts affirmed the commission's determination that GM's one-time special payment was holiday pay remuneration for the Independence Day holiday, thus precluding employees from receiving unemployment compensation. *Ashwell v. Ohio Dept. of Job & Family Servs.,* Montgomery App. No. 20522, 2005-Ohio-1928, 2005 WL 940901; *Brown,* supra; *Futey v. Ohio Dept. of Job & Family Servs.,* Richland App. No. 04 CA 14, 2004-Ohio-5400, 2004 WL 2260113; *Nicolas v. Ohio Dept. of Job & Family Servs.,* Franklin App. No. 04AP–771, 2005-Ohio-2635, 2005 WL 1252404; *Burns v. Ohio Dept. of Job & Family Servs.,* Trumbull App. Nos. 2004–T–0071 and 2004–T–0072, 2005-Ohio-6290, 2005 WL 3150238.[2] After reviewing the record before us, we find the reasoning and holdings of these decisions persuasive.

{¶ 14} R.C. Chapter 4141 governs unemployment compensation benefits. R.C. 4141.29 provides that "each eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter." "An individual is 'totally unemployed' in any week during which the individual performs no services and with respect to such week no remuneration is payable to the individual." R.C. 4141.01(M). This section has been interpreted as " 'if a claimant either performs services, or receives remuneration, he is not unem-

---

2. Also pending in the Sixth District is an appeal addressing this issue. *Geretz v. Ohio Dept. of Job & Family Servs.,* Erie App. No. E–05–042, 2006-Ohio-321, 2006 WL 205108.

ployed.' " *Nicolas,* 2005-Ohio-2635, 2005 WL 1252404, at ¶ 19, quoting *In re DeLuca* (June 19, 1979), Franklin App. No. 79AP–28, 1979 WL 209120. See, also, *Rini v. Unemp. Comp. Bd. of Review* (1983), 9 Ohio App.3d 214, 215, 9 OBR 364, 459 N.E.2d 602. "Remuneration" is defined as "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash * * *." R.C. 4141.01(H). Moreover, remuneration may also include payment terms such as vacation pay or allowance, separation pay, holiday pay, paid absence allowance, down-time paid absences allowance or a short work week pay. Ohio Adm.Code ("OAC") 4141–9–04(B).

██ {¶ 15} It is undisputed that the employees did not engage in any productive activity for GM during that week for the special payment. However, "personal services" are not limited to engaging in some productive activity. "When a laid off employee retains his status as an available employee, retains his seniority, pension rights and any right to severance pay, and registers and reports for state compensation, any compensation he is paid by his employer is for his services." *Ashwell,* 2005-Ohio-1928, 2005 WL 940901, at ¶ 44, citing *United Steelworkers of Am. AFL–CIO v. Doyle* (1958), 168 Ohio St. 324, 7 O.O.2d 41, 154 N.E.2d 623. See, also, *Ashwell,* supra, at ¶ 44. Therefore, "personal service" " 'means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.' " *Doyle,* supra, 168 Ohio St. at 327, 7 O.O.2d 41, 154 N.E.2d 623, quoting *Soc. Sec. Bd. v. Nierotko* (1946), 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718.

{¶ 16} In the instant case, it has been determined that the employees retained many of the aspects of their employment relationship with GM during their layoff, including seniority status and pension rights. *Ashwell,* supra, at ¶ 45; *Brown,* supra, at ¶ 11. Therefore, pursuant to *Doyle,* the special payment constituted compensation for personal services. However, in order for the employees to have been "totally unemployed" and entitled to unemployment benefits, the special payment cannot be considered remuneration.

{¶ 17} R.C. 4141.31(A)(5) provides that unemployment "benefits otherwise payable for any week shall be reduced by the amount of remuneration or other payments a claimant receives with respect to such week as * * * vacation pay or allowance payable under the terms of a labor-management contract or agreement, or other contract of hire, which payments are allocated to designated weeks." Therefore, if the special payment is deemed remuneration, then the employee's unemployment benefits are reduced by the special payment amount.

{¶ 18} The commission found that the special payment constituted remuneration in the form of holiday pay or allowance in excess of the employees' weekly benefit amount. It determined, based on the weight of the evidence presented, that the purpose of the special payment was to replace the lost Independence

Week Shutdown and Holiday Pay, which was allocated to designated weeks. We find that this decision was neither unlawful nor unreasonable nor against the manifest weight of the evidence.

{¶ 19} The MOU specifically mentioned that the special payment was for those employees "who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM–UAW National Agreement." The MOU further acknowledged that the receipt of this special payment might affect the employees' unemployment benefits. The employees were paid at the same rate they would have been paid for the shutdown and holiday, and tax deductions, wage-progression credits, and the accrual of vacation benefits were routinely managed for that particular week. The special payment was classified by GM as "MISCIWSP" and "MISCHOSP," which has been interpreted as "miscellaneous independence week special pay" and "miscellaneous holiday special pay." *Nicolas*, 2005-Ohio-2635, 2005 WL 1252404, at ¶ 24, quoting *Futey*, 2004-Ohio-5400, 2004 WL 2260113, at ¶ 21.

{¶ 20} Moreover, the commission recognized the "Shop Committee Informational Flyer" as further support of its decision that the parties believed and intended that the special payment replaced the shutdown week and holiday pay. Based on the foregoing, the commission could have reasonably found that the special payment was remuneration.

{¶ 21} Nevertheless, the employees argue that the trial court was correct in its holding because no remuneration was "payable" to them during the week ending July 4 as they could not meet the Agreement's prerequisites for receiving payment. They also maintain that until the MOU was executed, there was no amount payable to them, and that GM "allocated" the payment to the week of August 9. These arguments have been rejected in *Ashwell* and *Nicolas*. As the *Ashwell* court reasoned, these are "issues of fact which are matters the Commission must determine. Our task is to determine whether the Commission's decision is 'unlawful, unreasonable, or against the manifest weight of the evidence.'" *Ashwell*, 2005-Ohio-1928, at ¶ 50, quoting *Tzangas*, 73 Ohio St.3d at 697, 653 N.E.2d 1207.

{¶ 22} Sufficient evidence existed before the commission to support its findings that, pursuant to the MOU, the parties agreed to waive certain prerequisites under the Agreement that would normally prevent the employees from receiving the shutdown and holiday pay.

{¶ 23} Furthermore, as noted by the *Nicolas* court, the date on which a payment is received is not dispositive. *Nicolas*, 2005-Ohio-2635, at ¶ 26. Pursuant to R.C. 4141.31(A)(5), benefits otherwise payable for any week are to be

reduced by the amount of remuneration a claimant receives with respect to "vacation pay or allowance payable under the terms of a labor-management contract or agreement * * * which payments are allocated to designated weeks." Ohio Adm.Code 4141–9–05(A) provides that "remuneration in the form of holiday pay will be applied to the week during which the holiday occurs as specified by state or national declaration, regardless of when such remuneration is actually received." Moreover, OAC 4141–9–04(B) states that "remuneration may be paid in cash and may be denominated by terms such as vacation pay or allowance, separation pay, holiday pay, paid absence allowance, downtime paid absence allowance or short workweek pay."

{¶ 24} In its well-reasoned opinion, the *Ashwell* court addressed the employees' arguments and concluded:

> The Independence Week Shutdown pay period identified in the National Agreement is the period of Monday, June 29 through Thursday, July 2, 1998. One of the holidays for which payment is specified by the National Agreement is July 4, 1998. The July 4 holiday was observed on Friday, July 3 in 1998. The MOU provides that eligible employees "shall receive a one time special payment in the amount they would have been entitled to receive had they not been on strike or layoff" during the Independence Week Shutdown and Holiday. Per O.A.C. 4141–9–05(A), the pay for the Independence Day holiday necessarily must apply to July 3, 1998, the last day of the Independence Week Shutdown and Holiday period that year.

> The foregoing provisions support the conclusion of the Commission [* * *] that the One Time Special Payment was a form of vacation pay. The further question is whether, as vacation pay, it was allocated to the designated work week of June 29 through July 3, 1998.

> To "allocate" means "to apportion for a specific purpose or to particular persons or things." Webster's Third International New Dictionary. Here, the One Time Special Payment was apportioned by recipient and amount to persons who, but for their inability to work the required prior and subsequent shifts because of the layoff, would have been entitled to receive Independence Week Shutdown and Holiday Pay in 1998 for the week designated. Therefore, the Commission could reasonably find, as it did, that the One Time Special Payment was allocated to the week designated. On the standard of review we are required by *Tzangas* to apply, we cannot find that the Commission's decision was unreasonable, unlawful, or against the manifest weight of the evidence.

*Ashwell*, 2005-Ohio-1928, at ¶ 57–59. See, also, *Nicolas*, 2005-Ohio-2635.

{¶ 25} We agree with both the *Nicolas* court, as well as the *Ashwell* court, that the commission could reasonably conclude that the special payment was allocated

to the shutdown and holiday, thereby constituting remuneration for purposes of R.C. 4141.31(A)(5). *Nicolas,* supra, at ¶ 28.

{¶ 26} The employees further contend that the special payment is more like a " 'signing bonus' paid to strikers and claimants involuntarily laid off" rather than holiday pay. We find that this argument lacks merit, as did the courts in *Ashwell* and *Nicolas.* Pursuant to R.C. 4141.01(H)(2) a "bonus" is a form of remuneration. The payment of a bonus renders an employee, even one who is laid off, ineligible for benefits because he is not unemployed. Therefore, the Commission could reasonably find that the special payment was a bonus. *Ashwell,* 2005-Ohio-1928, at ¶ 53; *Nicolas,* 2005-Ohio-2635, at ¶ 31.

{¶ 27} Moreover, the employees suggest that we should follow a Missouri decision—*Gen. Motors Corp. v. Buckner* (Mo.App.2001), 49 S.W.3d 753. Just as the *Ashwell* court refused to follow this case, we too, are not bound to the *Buckner* holding. *Ashwell,* 2005-Ohio-1928, at ¶ 64. However, we agree with the following reasoning set forth in *Buckner* :

> We are not compelled, however, to follow decisions from other jurisdictions. Due to the fact that the types of statutes involved in the various states are not uniform but frequently divergent, we do not consider authorities from other jurisdictions decisive of this matter. Rather, we interpret our own statutes to determine whether the special payment was deductible from unemployment compensation payments. In addition, the appellate courts * * * reiterated that the determination of whether wages were paid or payable for a particular week was a factual determination; and affirmed their respective boards, because their scope of review required judicial deference to the boards' decisions. We, too, defer to our Commission's decision regarding the week with respect to which the special payment was deemed payable.

Id., 49 S.W.3d at 759.

{¶ 28} Therefore, we also defer to the Commission's decision and find that its decision was neither unreasonable nor unlawful, nor against the manifest weight of the evidence. The trial court erred in reversing the commission's findings because, from the record and the evidence, the commission could reasonably find that the employees received remuneration in the form of holiday pay or allowance in excess of their weekly unemployment compensation benefit amount.

{¶ 29} Accordingly, the assignments of error are sustained.

*Judgment reversed.*

CORRIGAN and GEORGE, JJ., concur.

JOYCE J. GEORGE, J., retired, of the Ninth Appellate District, sitting by assignment.

556

## APPENDIX

GM's Assignments of Error:

1. The Common Pleas Court erred by failing to afford appropriate deference to the decision and findings of the Ohio Unemployment Compensation Review Commission.

2. The Common Pleas Court erred by concluding that Claimants were "totally unemployed" during the week at issue under Ohio Revised Code section 4141.01(M).

ODJFS's Assignments of Error:

I. The Cuyahoga County Common Pleas Court decision is contrary to U.S. Supreme and Ohio Supreme Court law that employees remain in service to their employer during a temporary layoff thereby rendering them "totally employed" as described in R.C. 414.01(M) of Ohio's Unemployment Act.

II. The Cuyahoga County Common Pleas Court erred in not deferring to the Review Commission's factual determination that when claimants received the one time special payment, they received remuneration, another statutory indicator that they were "totally employed."

III. The Cuyahoga County Common Pleas Court erred in rejecting the Review Commission's allocation of the one time special payment to the week of the July 4, 1998 where the Unemployment Act authorizes such allocation because the labor agreement was silent as to an allocation date and the evidence of record demonstrated that claimants and GM intended that the one time special payment be allocated to that week.

IV. The Cuyahoga County Common Pleas Court erred in reversing the Review Commission's denial of unemployment benefits to claimants who received remuneration for the same week they were claiming unemployment benefits as to the Unemployment Act expressly prohibits double payments.