DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas that affirmed the decision of the Ohio Unemployment Compensation Review Commission denying unemployment benefits to appellants for a one-week period in 1998. For the following reasons, the judgment of the trial court is reversed.
 {¶ 2} The following background is drawn from stipulated facts and the decisions of the review commission and the trial court. In early 1998, workers at two General Motors Corporation facilities in Michigan went on strike. Those facilities produced auto parts for other General Motors ("GM") plants, including the one in Sandusky, Ohio, where appellants were employed. Appellants were laid off in June 1998, when the strike led to a lack of work due to a shortage of parts. At the time of the strike, the claimants, all members of the United Auto Workers labor union ("UAW"), and GM were operating under a National Collective Bargaining Agreement. Under the agreement, from Monday, June 29, 1998, until Thursday, July 2, 1998, was designated as the Independence Week shut-down period and Friday, July 3, 1998, was the Independence Day holiday. Pursuant to the bargaining agreement, GM agreed to pay employees during that time off providing they met certain criteria. One criterion was that the employee had to work the scheduled day before and the day after the shut-down period. All parties agree that because of the layoff, the claimants could not meet this criterion since they did not work the days before and after the holiday. After being laid off, appellants applied for unemployment compensation benefits and on July 28 and 29, 1998, a hearing was held by the Ohio Bureau of Employment Services ("OBES") pursuant to R.C.4141.29(D)(1)(a) to determine their eligibility for benefits. Also in late July, the Michigan local unions and GM reached an agreement to end the strike. As part of the settlement agreement, GM agreed to pay each employee, including appellants, a "one time special payment" in August, as set forth in a "Memorandum of Understanding" ("MOU"). This payment was to be an amount equal to the shut-down week and holiday pay they would have received if they had not been laid off during the July 4th week because of the strike. The MOU provided as follows:
 {¶ 3} "As a result of these negotiations and without prejudice to the position taken by either party, and without setting any precedent in the disposition of any other case involving similar circumstances, the parties agree to the following:
 {¶ 4} "Employees who were on strike or layoff status at General Motors locations due to the labor dispute at the Flint Metal Center and Delphi E Flint East and who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM-UAW National Agreement, shall receive a one time special payment in the amount they would have been entitled to had they not been on strike or layoff.
 {¶ 5} "This payment will be made in an expeditious manner and taxed as a regular wage payment in accordance with Document No. 81 of the GM-UAW National Agreement.
 {¶ 6} "This payment shall initially be made by General Motors. Thereafter, payments otherwise required by Paragraph III.A. of the Memorandum of Understanding Joint Activities, 1996 GM-UAW National Agreement, shall be waived until General Motors is reimbursed for the total amount paid to employees as a result of this Memorandum.
 {¶ 7} "Further, the parties recognize that these payments may result in employees being ineligible for unemployment compensation already received. Employees impacted by such overpayment of unemployment compensation will be responsible to repay the State that provided the unemployment compensation."
 {¶ 8} The payment provided for in the MOU was paid to appellants on August 13 or 14, 1998, in addition to their regular pay. GM paid them 32 hours calculated at their regular rate of pay for June 29 through July 2, 1998, and 8 hours at their regular rate of pay for July 3, 1998. All regular deductions were made from this pay. Additionally, appellants received credit for the Independence Day week for purposes of calculating seniority and additional vocational entitlement.
 {¶ 9} Appellants applied for unemployment benefits for the duration of their layoff. GM contended, however, that the payment set forth in the MOU constituted holiday pay equivalent to their full pay for the week of July 4, 1998, which would mean claimants would not be entitled to unemployment benefits for that week. Appellants responded that the week's pay allowed by the MOU was a "special payment," which should not prevent their receiving full unemployment compensation for the July 4th week. The OBES agreed with GM and benefits were awarded to appellants for the duration of the layoff with the exception of the week in question. Appellants filed an appeal of that decision but on May 17, 1999, the OBES denied benefits for the week ending July 4, 1998. Appellants appealed that decision, and on April 10, 2001, a hearing was held before the Unemployment Compensation Review Commission. On December 12, 2002, the Review Commission denied the appeal. The review commission's decision stated in pertinent part:
 {¶ 10} "The question to be determined by the Review Commission is whether the monies received by claimants are deductible as remuneration in the form of holiday pay. This special payment was negotiated by General Motors Corporation and the United Auto Workers. The weight of the evidence before the Review Commission is that the purpose of this payment was to replace the lost Independence Week Shutdown Period pay and Independence Holiday pay. Certain prerequisites for receiving this pay could not be met by employees because of the strikes and layoff situations existing at the time. In the negotiation process, it appears that the parties agreed to waive these impossible prerequisites and pay the unemployed workers a special payment calculated to make them whole for the loss of the holiday payments." The review commission indicated its determination that the parties intended the payments to replace the Independence Week Holiday pay was evidenced by a flyer distributed to employees the week they returned to work. The flyer, captioned "Shop Committee — Informational Flyer," contained the following statement under the heading "Independence Week Holiday Pay":
 {¶ 11} "The International Union and Corporation have agreed to pay the negotiated settlement concerning the Independence Week Shutdown Week. This payment will be included in the regular payroll checks on August 14, 1998. Even though you only receive one check, taxes will be deducted from the individual amounts of the two weeks, as per your regular payroll tax status."
 {¶ 12} The review commission concluded that "[c]laimants received deductible remuneration in excess of their weekly benefit amounts with respect to the week ending July 4, 1998."
 {¶ 13} As a result of the review commission's decision, thousands of affected workers throughout Ohio, in addition to appellants herein, were denied unemployment benefits for the week of July 4, 1998. Due to statutory venue requirements, the appeals that followed were filed in seven different counties — Defiance, Trumbull, Montgomery, Franklin, Richland, Cuyahoga and Erie Counties. See R.C. 4141.282(B). All trial courts affirmed the decision of the Review Commission with the exception of the Cuyahoga County Court of Common Pleas, which reversed the Commission's finding. The 2nd, 3rd, 5th, 8th, 10th and 11th District Courts of Appeals have affirmed the Review Commission's decision.[1] Pursuant to R.C. 4141.282, appellants appealed the decision of the Review Commission to the Erie County Court of Common Pleas. On May 10, 2005, the lower court affirmed the decision of the Review Commission, finding that the one-time payment appellants received in August 1998, was holiday pay for the July 4th week and therefore was deductible from their unemployment compensation benefits for that same period.
 {¶ 14} Appellants now set forth four assignments of error:
 {¶ 15} "1. The Trial Court erred in affirming the Decision of the Review Commission denying benefits to claimants because they were totally unemployed under Revised Code Section 4141.01(M).
 {¶ 16} "2. The trial court erred in affirming the Decision of the Review Commission denying benefits to claimants because the one-time special payment was not holiday pay under Section4141.31(A)(5) and could not be allocated to the week ending July 4, 1998.
 {¶ 17} "3. The trial court erred in affirming the Decision of the Review Commission denying benefits to claimants because the special payment was not remuneration under Revised Code Section4141.01(H).
 {¶ 18} "4. The Trial court erred affirming the Decision of the Review Commission denying benefits to claimants, where the special payment was a form of bonus, that could not be used to reduce benefits under Section 4141.31(A)(5)."
 {¶ 19} Appellants' four assignments of error are interrelated and will be considered together. Appellants argue that, pursuant to 4141.01(H) and (M), the one-time special payment was not remuneration; the payment was not allocated to the week ending July 4, 1998; it was not holiday pay under 4141.31(A)(5); and it was a bonus under R.C. 4141.31(A)(5) that could not be used to reduce benefits.
 {¶ 20} We begin by setting forth the appropriate standard of review. The trial court reviews the appeal on the certified record provided by the Ohio Unemployment Compensation Review Commission. This court reviews the decision of the Unemployment Compensation Review Commission under the same standard of review as the trial court, seeking to determine whether the decision was unlawful, unreasonable or against the manifest weight of the evidence. Tzangas, Plakas Mannos v. Ohio Bur. Of Emp. Serv.
(1995), 73 Ohio St.3d 694, 696. While appellate courts are not permitted to make factual findings or determine the credibility of witnesses, they do have a duty to determine whether the review commission's decision is supported by the evidence in the record. Id.
 {¶ 21} On appeal, GM characterizes the special payment as Independence Week shutdown pay and July 4th holiday pay. The review commission found that the weight of the evidence supported a finding that the purpose of the payment "was to replace the lost Independence Week Shutdown Period pay and Independence Holiday pay." However, upon review of the evidence before the review commission, we find that the only connection between the special payment and the week ending July 4, 1998, is the fact that the payment was computed based on the same formula that would have been used to determine shutdown week/holiday pay for each eligible employee. The evidence indicates to this court that the week in question was used as a means of determining how much each laid-off employee would receive as the special one-time payment after returning to work. The MOU merely stated that employees "who were on strike or layoff status * * * and who didnot receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM-UAW National Agreement, shall receive a one time special payment inthe amount they would have been entitled to had they not been onstrike or layoff." (Emphasis added.) The memorandum did not specify that the special payment was for the week ending July 4, 1998, and did not label the special payment Independence Week shutdown pay or holiday pay for Independence Day. It is undisputed that the payment was included in appellants' paychecks received August 14 or 15, 1998, for the pay period ending August 9, 1998. Additionally, the paychecks did not designate the special payment as shutdown or holiday pay for the week ending July 4, 1998; they listed the special payment as "Misc — all other."
 {¶ 22} Further, appellants had no legal right to the special payment during the week ending July 4, 1998, and GM had no obligation to pay it at that time. In fact, the strike was ongoing at that time. The MOU was not drafted until July 28, 1998.
 {¶ 23} While this court is mindful of the standard of review requiring judicial deference to the factual determinations in the decision of the Review Commission, after our own careful review of the record, we find for the reasons stated above that its decision was against the weight of the evidence. Based on the foregoing, we find that, while the one-time special payment was remuneration, which could include payment in the form of a bonus, the evidence does not support a finding that the payment wasallocated to the holiday week ending July 4, 1998. Therefore, it was not holiday pay for the week ending July 4, 1998, and did not subject appellants to a reduction in their unemployment benefits for that week. Accordingly, appellants' first, second, third and fourth assignments of error are well-taken. Accordingly, the trial court erred by affirming the decision of the Review Commission.
 {¶ 24} Based on the foregoing, we find that our holding herein is in conflict with the following decisions: Ashwell v.Dir., Ohio Dept. Job and Family Serv., 2nd Dist. No. 20522,2005-Ohio-1928; Brown. v. Dir., Ohio Dept. Job and FamilyServ., 3rd Dist. Nos. 4-05-07 4-05-08, 2005-Ohio-5887; Futeyv. Dir., Ohio Dept. Job and Family Serv., 5th Dist. No. 04 CA 14, 2004-Ohio-5400, cert. den. 105 Ohio St.3d 1452,2005-Ohio-763; Brown v. Dir., Ohio Dept. Job and Family Serv.,
8th Dist. Nos. 86111 86134, 2006-Ohio-97; Nicolas v. Dir.,Ohio Dept. Job and Family Serv., 10th Dist. No. 04AP-771,2005-Ohio-2635; Burns v. Dir., Ohio Dept. Job and Family Serv.,
11th Dist. Nos. 2004-T-0071 2004-T-0072, 2005-Ohio-6290. We therefore find that certification to the Supreme Court of Ohio is warranted and certify the following question:
 {¶ 25} "Did the one-time special payment made by appellee General Motors Corporation to appellants constitute holiday pay remuneration such that appellant union members, laid off over the July 4, 1998, holiday weekend due to a strike, were not entitled to unemployment compensation for that week?"
 {¶ 26} Pursuant to Section 3(B)(4), Article IV, Ohio Constitution, this court certifies the record of the instant case to the Ohio Supreme Court for review and final determination.
 {¶ 27} On consideration whereof, we find that substantial justice was not done the parties complaining and the decision of the Erie County Court of Common Pleas is reversed. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., concur.
[1] Ashwell v. Dir., Ohio Dept. Job and Family Serv., 2nd Dist. No. 20522, 2005-Ohio-1928; Brown. v. Dir., Ohio Dept. Joband Family Serv., 3rd Dist. Nos. 4-05-07 4-05-08,2005-Ohio-5887; Futey v. Dir., Ohio Dept. Job and Family Serv.,
5th Dist. No. 04 CA 14, 2004-Ohio-5400, cert. den.105 Ohio St.3d 1452, 2005-Ohio-763; Brown v. Dir., Ohio Dept. Job and FamilyServ., 8th Dist. Nos. 86111 86134, 2006-Ohio-97; Nicolas v.Dir., Ohio Dept. Job and Family Serv., 10th Dist. No. 04AP-771,2005-Ohio-2635; Burns v. Dir., Ohio Dept. Job and Family Serv.,
11th Dist. Nos. 2004-T-0071 2004-T-0072, 2005-Ohio-6290.