GERETZ ET AL., APPELLEES, *v.* DIR., OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, ET AL., APPELLANTS.

[Cite as *Geretz v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 89, 2007-Ohio-2941.]

(No. 2006–0405—Submitted February 27, 2007—Decided July 5, 2007.)

MOYER, C.J.

{¶ 1} In this appeal, we are asked the following question, certified to this court as a conflict by the Sixth Appellate District: "Did the one-time special payment made by [appellant] General Motors Corporation to [appellees] constitute holiday pay remuneration such that [appellee] union members, laid off over the July 4, 1998, holiday weekend due to a strike, were not entitled to unemployment compensation for that week?"

A

{¶ 2} In 1996, General Motors Corporation ("GM") signed a national collective-bargaining agreement with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). The agreement designated Monday, June 29, 1998, through Thursday, July 2, 1998, as the Independence Week shutdown period and Friday, July 3, 1998, as the Independence Day holiday. Under the agreement, to be paid for those days off, GM

employees were required to work the day prior to and immediately following the shutdown period and holiday.

{¶ 3} In June 1998, workers declared a strike at two GM plants in Michigan. These plants produced parts for several GM plants in Ohio. As the strike progressed, workers at the Ohio plants were laid off because they had an insufficient supply of parts to continue working. These workers, some of whom are the appellees, were unable to work the required days to be eligible for the holiday pay because they were laid off.

{¶ 4} As part of the settlement negotiations ending the strike, GM and the UAW entered into a "Memorandum of Understanding" on July 28, 1998. The memorandum stated:

{¶ 5} "Employees who were on strike or layoff status at General Motors locations due to the labor dispute at the Flint Metal Center and the Delphi E Flint East and who did not receive Independence Week Shutdown and Holiday pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM–UAW National Agreement, shall receive a one time special payment in the amount they would have been entitled to had they not been on strike or layoff.

{¶ 6} "The payment will be * * * taxed as a regular wage payment in accordance with * * * the GM–UAW National Agreement.

{¶ 7} " * * *

{¶ 8} "Further, the parties recognize that the payments may result in employees being ineligible for unemployment compensation already received. Employees impacted by such overpayment of unemployment compensation will be responsible to repay the State that provided the unemployment compensation."

{¶ 9} Appellees returned to work in August 1998. Subsequently, appellees claimed unemployment compensation for the weeks they were laid off, including the Independence Week shutdown and holiday. GM contended that the appellees had received compensation for that week and that their claim for unemployment compensation for that week should be disallowed. The Ohio Bureau of Employment Services agreed with GM and disallowed unemployment compensation for June 29 through July 3, 1998. The Unemployment Compensation Review Commission denied the appellees' appeal. Because of statutory venue requirements, the appeals from that decision were filed in several counties. Ultimately, seven different courts of appeals heard argument on this issue. Six of the courts held that the one-time payment made by GM under the memorandum constituted holiday pay and upheld the determination of the commission denying unemploy-

ment compensation for the appellees.[1] The Sixth District Court of Appeals held that "while the one-time special payment was remuneration, which could include payment in the form of a bonus, the evidence does not support a finding that the payment was *allocated* to the holiday week ending July 4, 1998." (Emphasis sic.) *Geretz v. Ohio Dept. of Job & Family Servs.*, Erie App. No. 05–042, 2006-Ohio-321, 2006 WL 205108, ¶ 23. We accepted the conflict certified by the Sixth District Court of Appeals. 109 Ohio St.3d 1421, 2006-Ohio-1967, 846 N.E.2d 532.

### B

{¶ 10} The standard of review in unemployment-compensation appeals is well established. "[A] reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 697, 653 N.E.2d 1207. *Tzangas* and the case it cited, *Irvine v. State Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587, both involved claimants who had been found to have left employment "without just cause" pursuant to R.C. 4141.29(D)(2). But other courts have applied this standard in other areas of unemployment compensation. See *Abrams–Rodkey v. Summit Cty. Children Servs.*, 163 Ohio App.3d 1, 2005-Ohio-4359, 836 N.E.2d 1, ¶ 7 (reviewing court will not reverse the commission's determinations that a labor dispute did not involve a lockout "so long as they are supported by credible proof"); *Tietz v. Ohio Dept. of Job & Family Servs.*, Trumbull App. No. 2004–T–132, 2005-Ohio-4767, 2005 WL 2210704, ¶ 13 (same). We reiterate our holding that when reviewing an appeal from the Unemployment Compensation Review Commission, the court may reverse the commission's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence.

### C

{¶ 11} The following statutory provisions guide our analysis. "Each eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter." R.C. 4141.29.

---

1. *Ashwell v. Ohio Dept. of Job & Family Servs.*, 2d Dist. No. 20522, 2005-Ohio-1928, 2005 WL 940901; *Brown v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 311, 2005-Ohio-5887, 842 N.E.2d 108; *Futey v. Ohio Dept. of Job & Family Servs.*, 5th Dist. No. 04 CA 14, 2004-Ohio-5400, 2004 WL 2260113; *Rodriguez v. Ohio Dept. of Job & Family Servs.*, 165 Ohio App.3d 546, 2006-Ohio-97, 847 N.E.2d 458; *Nicolas v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP–771, 2005-Ohio-2635, 2005 WL 1252404; *Burns v. Ohio Dept. of Job & Family Servs.*, 11th Dist. Nos. 2004–T–0071 and 2004–T–0072, 2005-Ohio-6290, 2005 WL 3150238.

{¶ 12} "An individual is 'totally unemployed' in any week during which the individual performs no services and with respect to such week no remuneration is payable to the individual." R.C. 4141.01(M).

{¶ 13} " 'Remuneration' means all compensation for personal services * * *." R.C. 4141.01(H)(1).

{¶ 14} To be entitled to unemployment compensation for the week of June 29 through July 3, 1998, appellees would have been required to prove that they had performed no services and received no compensation for the week. "Services," however, are not the same as work. Anytime an employee retains his or her seniority and pension rights and is available for work with the employer, that employee provides services. *United Steelworkers of Am. AFL–CIO v. Doyle* (1958), 168 Ohio St. 324, 7 O.O.2d 41, 154 N.E.2d 623. For purposes of determining appellees' right to receive unemployment-compensation benefits, appellees performed services for GM by continuing the employer-employee relationship. Id. at 327, 7 O.O.2d 41, 154 N.E.2d 623. If the appellees received remuneration for that week as well, they are not entitled to unemployment compensation.

{¶ 15} The memorandum provided that each GM employee who was on strike or lockout and who would have otherwise been qualified for the Independence Week shutdown and holiday pay "shall receive a one time special payment in the amount they would have been entitled to had they not been on strike or layoff." If that compensation, described in the memorandum, is allocated to the week of June 29 through July 3, 1998, then the appellees are not entitled to unemployment compensation for that week.

{¶ 16} R.C. 4141.31(A) provides: "Benefits otherwise payable for any week shall be reduced by the amount of remuneration or other payments a claimant receives with respect to such week as follows:

{¶ 17} " * * *

{¶ 18} "(5) Vacation pay or allowance payable under the terms of a labor-management contract or agreement, or other contract of hire, which payments are allocated to designated weeks."

{¶ 19} The appellees assert that the one-time special payment was part of a strike settlement. They have not identified any evidence in the record to suggest this sort of classification. Rather, the argument urged by GM, that this pay is vacation pay, is more consistent with the evidence. The memorandum states that those employees who were on strike and did not receive holiday pay are entitled to receive a payment equal to the amount they would have received had they not been laid off. The memorandum allocates the pay to the Independence Holiday

shutdown week, making the allocation vacation pay and precluding the appellees' receiving unemployment compensation for that week.

{¶ 20} We agree with the conclusion of the Unemployment Compensation Review Commission that "[t]he weight of the evidence before the Review Commission is that the purpose of this payment was to replace the lost Independence Week Shutdown Period pay and Independence Holiday pay." The determination of the Unemployment Compensation Review Commission was lawful, reasonable, and not against the manifest weight of the evidence.

{¶ 21} We answer the certified question in the affirmative and reverse the judgment of the court of appeals.

Judgment reversed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and DEGENARO, JJ., concur.

MARY DEGENARO, J., of the Seventh Appellate District, sitting for CUPP, J.

---

Cloppert, Latanick, Sauter & Washburn, Frederick G. Cloppert Jr., and William J. Steele, for appellees.

Jones Day, Barbara J. Leukart, and Laura R. Anderson, for appellant General Motors Corporation.

Marc Dann, Attorney General, Stephen P. Carney, Senior Deputy Solicitor, Chelsea S. Rice, Assistant Solicitor, and David E. Lefton, Senior Assistant Attorney General, for appellant Ohio Department of Job and Family Services.